R. VIRGINIA CALLAHAN *vs.* JOSEPH P. CALLAHAN & others.

Norfolk.    November 7, 1962. — December 17, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Corporation,* Transfer of stock, Stockholder.    *Waiver.*

Where the stockholders of a corporation, whose stock was subject to re-
strictions on transfer imposed for its benefit and capable of being
waived by it, transferred all outstanding stock to it and new stock was
issued to its employees and another pursuant to an agreement, made in
view of the poor financial condition of the corporation and other cir-
cumstances, that the employees would take over the business and that in
return they and the corporation would pay off certain debts and make
other payments, there was no merit in a contention, asserted by a credi-
tor of one of the former stockholders, that by reason of the restrictions
on stock transfer such stockholder retained an interest in the stock so
surrendered by him which could be reached and applied by the creditor.

PETITION IN EQUITY filed in the Probate Court for the
county of Norfolk on January 5, 1961.

The case was heard by *Reynolds, J.*

*William S. Monahan* for the petitioner.

*Albert Auburn* for the respondent Wellesley Lithograph,
Inc.

WHITTEMORE, J.    This petition in equity in the Probate
Court for Norfolk County seeks to reach, as Joseph P.
Callahan's only assets in the Commonwealth, shares of
stock of Callahan in Wellesley Lithograph, Inc. (Litho-
graph) (that is, shares standing in his name and, by amend-
ment, shares which, on original issue, without consideration,
he caused to be put in the name of Mildred C. Hamilton),
for application to the amount overdue to his wife, R. Vir-
ginia Callahan, under a separate support decree which
ordered the payment of $200 a week for the support of the
wife and four minor children.

A final decree was entered dismissing the petition and
adjudging that (1) Callahan is not a director, officer, office-

holder, stockholder or employee of Lithograph; (2) he has no beneficial interest, legal or equitable, in the shares of Lithograph's stock registered in the name of Mildred C. Hamilton, trustee. The petitioner has appealed from that decree. The judge made a report of material facts.

Parts of the testimony are printed in the record pursuant to designation and counterdesignation and under Rule 2 (G) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 695,[1] we have examined the full transcript.

The petition was taken as confessed against Callahan. The case was tried on the petition and the answers of Lithograph and Hamilton. The salient findings depend principally upon the testimony of Hamilton which is substantially uncorroborated by records or documents.

The judge found, inter alia, these facts: Callahan as sole proprietor owned a mail advertising business, the assets of which in the fall of 1959 consisted mostly of encumbered machinery. The business was in bad shape financially and about to collapse and Callahan sought the advice of Hamilton with whom he had become acquainted through business dealings with an investment advisory service for which Hamilton worked as a statistician and research assistant. After inspecting the books and consulting other financial analysts, Hamilton formed the opinion that the business could be salvaged with a cash outlay of $10,000. She told Callahan that the business would have to be incorporated and that she would invest $10,000 of her money in it in return for one half the stock and that she would have complete control of the financial affairs of the corporation. "This was done." The business was incorporated on April 7, 1960, Hamilton and Callahan each receiving 498 shares and William E. O'Halloran, Esquire, one share which he held in trust for Callahan and Hamilton. Mr. O'Halloran incorporated the business and acted as clerk until October

---

[1] "The full court may in its discretion require the transcript of the testimony to be delivered to it by the clerk in whose custody it is, and may make such use of the transcript as it deems proper."

31, 1960. These three were, until that date, the officers and directors. Hamilton invested $15,000 instead of $10,000 as she had contemplated. In June, 1960, Hamilton became ill. Callahan took over the financial management, and the condition of the corporation worsened, again to the point of imminent collapse. While Hamilton was hospitalized for about four months the business was chiefly operated by Arthur Waddell, Donald Quilty, and Roy Hicks, Junior, key employees. On September 19, 1960, ninety-nine shares of stock of Lithograph were issued to each of the three key employees in payment of overdue wages, expenses, and commissions. "These . . . shares . . . came out of the original 498 shares issued to . . . Callahan."[2] Hamilton not being well and Callahan living in Florida and the finances collapsing, Callahan and Hamilton "agreed to transfer all their stock in the corporation including the one share held in trust . . . by William E. O'Halloran to . . . [the three key employees] in return for which they as well as the corporation were to pay off certain individual debts of the corporation, debts of . . . [the former mail advertising business of Callahan], and debts of . . . Callahan and . . . Hamilton and to pay . . . Hamilton $100 weekly until January 1, 1970, at which time she was to surrender the stock to the corporation as set forth in Exhibit 12.[3] This agree-

---

[2] We note from the original transcript that, according to Hamilton's testimony, the three key men called on Hamilton at a time when Callahan was in Miami and said, "We are done," and that it was then arranged "between the four of us that the boys would continue as . . . employee[s] of the business for 10% of the stock apiece and this was done and that is how they received the 99 shares of the business."

[3] "Mildred C. Hamilton, Trustee on the one hand, first party, of Miami, Florida, and we Donald L. Quilty, Roy F. Hicks, Jr., and Arthur D. Waddell of Massachusetts on the other, second parties do hereby agree with each other that:

The First Party shall:
1. Relinquish management of Wellesley Lithograph, Inc. to second parties
2. Sell the 498 shares of said corporation standing in her name as Trustee to the said Corporation on Jan. 1, 1970, for par value
3. Waive all rights as stockholder in the said Corporation
4. Comply with direction of second parties in voting in new officers and directors
5. Resign as Director and Officer
all provisions pending compliance with the second parties agreement to:
1. Hold harmless said first party and others for debts of Corporation

ment was consummated at . . . [Mr.] O'Halloran's office on October 31, 1960. All the outstanding stock . . . [certificates] were surrendered by . . . [Mr.] O'Halloran in behalf of the corporation. All the officers and directors resigned and thereupon Hicks, Quilty, and Waddell were elected officers and directors of the corporation. The three new officers thereupon issued 167 shares to each of them and 496 shares to . . . Hamilton as trustee under the agreement set forth in Exhibit 12." Through the efforts of the new officers the business of the corporation has improved and ninety-eight per cent of the business has been obtained through their efforts after October 31, 1960. The corporation through May 17, 1961, had paid Hamilton $2,400. "There was no testimony that . . . Hamilton held shares in trust for . . . Callahan except that based on surmise."

The evidence shows that on October 31, 1960, the stockholdings of Hamilton and Callahan were, in effect, pooled for sale, and that the proposal hastily made, accepted and consummated in the course of two hours on the evening of that day when Hamilton arrived by air unannounced from Miami, was entered into pursuant to no prior agreement between the buyers and either seller. Before leaving Florida Hamilton had discussed with Callahan the financial difficulties and "he [had] decided that if I could convince the boys . . . to take the business and assume these debts, for both him and myself . . . the thing to do was let them have it."

1. There is nothing in the petitioner's contention that Callahan retains an interest in shares originally owned by him because of failure to comply with restrictions on their transfer contained in the articles of organization. In re-

2. Pay note #A–7518, held by the Wellesley National Bank until collateral for said obligation shall have been sold
3. Pay to the first party as trustee $100 per week until Jan. 1, 1970
all provisions being similarly dependent upon first party's compliance with her agreement. All provisions will have immediate effect.
Signed and sealed this 31st day of October, 1960.

|  |  |  |
|---|---|---|
| First Party | /s/ | Mildred C. Hamilton |
| Second Party | /s/ | Donald L. Quilty |
|  | /s/ | Arthur D. Waddell |
|  | /s/ | Roy F. Hicks Jr." |

spect of the transfer of ownership to the key employees, the original stockholders and officers acted on October 31, 1960, with almost complete disregard of form, but the evidence shows, as the judge found, that there was then a surrender of all the old shares to the corporation and a new issue to Hicks, Quilty, Waddell, and Hamilton. We conclude that there was no prior transfer of shares or assignment of certificates from old to new stockholders to which the restrictions would apply. Furthermore, the restrictions were for the benefit of the corporation and, as was expressly provided therein, they could be waived. *Blabon* v. *Hay,* 269 Mass. 401, 408–409. *Kentucky Package Store, Inc.* v. *Checani,* 331 Mass. 125, 129. *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 114. The corporation is not asserting them and in the circumstances could not. For all that appears there was a waiver of restrictions prior to the issue to the key employees of ninety-nine shares each on September 19. The fact is of no consequence. There is nothing to suggest that the restrictions were noted on any certificates or that the employees ever saw any certificates except those issued to them.[4] General Laws c. 106, § 8–204,[5] would appear applicable. All the officers and directors signed the ninety-nine share certificates. In any case, those shares were surrendered to the corporation on October 31.

2. The petitioner contends that the failure to establish a trust in the shares held by Hamilton was error on the ground that evidence of occurrences before and after October 31, 1960, requires the conclusion that prior to October 31 Callahan had transferred his 498 shares to Hamilton as trustee for his benefit and hence that the 496 shares issued on October 31 were in trust for Callahan. We disagree. There is some evidence suggesting such a finding, but the evidence does not require it.

---

[4] The two ninety-nine share certificates in evidence bore this endorsement: "This stock may be sold or transferred only to the Corp. Wellesley Lithograph, Inc. having been received in lieu of two weeks wages."

[5] "Unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it."

There is no suggestion in the petition, the presentation of the case in the Probate Court, the findings or in the petitioner's brief of an attempt to reach the proceeds of the sale to the key employees on the ground that a creditor of Callahan could assert an interest therein.

*Decree affirmed.*