PHYLLIS A. SODONES *vs.* STEPHEN J. SODONES.

Suffolk.     April 3, 1974. — August 5, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Contempt. Probate Court,* Appeal, Report of material facts, Findings by judge. *Equity Pleading and Practice,* Contempt proceeding, Appeal. *Constitutional Law,* Due process of law.

Absent a report of the evidence, denial by a judge of a Probate Court of a motion to enlarge a report of material facts was within his proper discretion, and this court was bound by the facts reported. [125-127]
This court declined to consider a claim by one adjudged in contempt in a Probate Court that he was denied due process of law by the judge's reliance on unsworn statements and information obtained outside the

hearing where there was no report of the evidence and nothing in a report of material facts to show the source of the evidence on which the judge relied. [127-128]

A citation served on a defendant twenty days before a scheduled contempt hearing, alleging that he failed to obey a decree of a Probate Court of a certain date but not containing specific information on failure to make support payments, gave the defendant adequate notice where he had made some of the payments, agreed with the plaintiff prior to the hearing that he owed a particular sum under the order, and appeared at the hearing. [128-129]

A citation issued on a contempt petition charging a defendant with violating a restraining order of a Probate Court by his acts "on . . . [a specified date] and other divers dates" but not describing the acts did not give the defendant adequate notice of such charge. [128-129]

A defendant found in contempt by a Probate Court in a case in which there was no indication to him whether the contempt was civil or criminal should be considered to be in civil contempt. [129-130]

Upon a review with a report of material facts by a judge of a Probate Court but no report of the evidence, there was no error in a finding by the judge that the defendant was financially capable of complying with a support order he disobeyed or in sentencing him to jail to coerce compliance with the order. [130-131]

PETITION for separate support filed in the Probate Court for the county of Suffolk on December 4, 1970.

A contempt petition filed on December 29, 1971, was heard by *Keville*, J.

*Richard M. Bluestein* (*Gershon M. Ratner* with him) for Stephen J. Sodones.

*Arthur E. Schoepfer*, for Phyllis A. Sodones, submitted a brief.

QUIRICO, J.  The defendant, Stephen J. Sodones, appeals from a decree of the Probate Court which adjudged him guilty of contempt for failure to comply with a prior court order for separate support. He also appeals from the denial of several motions related to his appeal from the contempt decree.

We summarize the prior proceedings pertinent to this appeal. On December 4, 1970, the plaintiff Phyllis A. Sodones filed a petition for separate support against the defendant; after a hearing on May 18, 1971, at which the defendant, after notice, did not appear, the judge issued

temporary orders which prohibited the defendant from imposing any restraint on the plaintiff's personal liberty, awarded her the custody of the couple's two minor children, and ordered the defendant to pay her $60 a week for support.

On December 29, 1971, the plaintiff filed a petition for contempt which alleged that the defendant had not obeyed the decree of May 18, 1971, in that he had not paid her the required weekly support payments and had also "violated the terms of the restraining order by his actions on December 10, 1971 and other divers dates." The petition stated that $1,380 was due the plaintiff in back payments. The defendant was served in hand with a citation to appear on February 3, 1972, to show cause why the petition for contempt should not be granted.

After a hearing held on the petition on that date, the probate judge found the defendant in contempt and sentenced him to ninety days in jail unless or until he should sooner purge himself by the payment of $1,580 and costs.[1] The defendant was committed to the Charles Street jail the same day. He claimed a timely appeal from the contempt decree. On February 23, 1972, a single justice of this court denied without prejudice his petition for stay of execution.

On March 2, 1972, the probate judge filed his report of material facts which included the following. There was a full hearing on the petition for contempt at which both parties were present and represented by counsel; the defendant was $1,580 in arrears on the support order of May 18, 1971, and was capable of meeting that order; "his failure to do so was his disregard of his children's welfare and his preference for drink over work." On May 18, 1971, when the support order was issued, the defendant was a union carpenter with foreman status receiving a net pay of $306 a week; from August through November, 1971, he averaged $250 a week; from June to August, 1971, and from November, 1971, to February, 1972, "his employment was

---

[1] The parties appear to have agreed that $1,580 was the amount due and owing in back support payments despite the $1,380 alleged in the petition for contempt.

sporadic and marked by absenteeism and for several weeks before February 3, 1972, he was on unemployment compensation receiving $87.00 a week. Phyllis [the plaintiff] and the children were on welfare." Since May 18, 1971, the defendant had "violated the restraining order on several occasions. He assaulted Phyllis on the street. He hurled an ash barrel against the side of the family house and slashed the tires on her automobile." The judge also stated in his report that he did not "subscribe" to the argument of the defendant's counsel, presented on motion for rehearing, that the defendant had become an alcoholic and was physically incapable of working to support his family.

On April 7, 1972, a single justice of this court granted the defendant's motion for a stay of execution pending appeal from the decree of the Probate Court, and on April 10, 1972, the probate judge ordered that the defendant be released from jail and that the case be continued generally for further disposition.

On April 20, 1972, the defendant filed in the Probate Court (1) a motion to expunge the contempt decree and sentence, or, alternatively, to quash the remaining sentence because of his inability to pay the $1,580 due; (2) an affidavit asserting his inability because of poverty to purge his contempt by paying the $1,580; (3) a motion to amend the release order of April 10 to clarify its meaning; and (4) a motion to enlarge the report of material facts. On April 24, the judge denied the defendant's motion to amend the release order and to report additional facts; on May 8, the defendant appealed from both denials.[2]

The defendant raises three arguments to support his contention that the contempt decree and sentence should be reversed: first, that the notice he received of the contempt proceeding was constitutionally invalid in that it

[2] Concurrent with these various proceedings in the State courts, the defendant also sought relief in the Federal courts with the ultimate result being that on April 18, 1972, the First Circuit Court of Appeals granted the defendant's motion to retain jurisdiction and stay proceedings until further order of that court, presumably pending final disposition of the defendant's appeal from the contempt decree in the State courts.

failed to inform him of the specific actions for which the contempt decree was sought and further failed to notify him whether he was being charged with civil or criminal contempt; second, that the judge's admission in evidence of unsworn statements of the plaintiff's counsel and his reliance on other evidence from a prior hearing violated the defendant's rights to due process under the Fourteenth Amendment to the United States Constitution; and third, that since the defendant, due to his poverty, was unable to pay the $1,580 ordered by the judge both at the time the sentence was imposed and thereafter, the part of his sentence ordering him to serve ninety days in jail denied him due process and equal protection of the laws in violation of the Fourteenth Amendment. Before reaching these claims, however, the defendant first raises questions concerning the judge's denial of his motion to enlarge the report of material facts.

1. The defendant argues that the judge's report does not contain findings necessary for this court to determine his constitutional claims relating to the contempt decree. His motion to enlarge the report sought to have the judge include therein certain suggested findings which he asserts would have cured the alleged deficiencies,[3] and he argues that it should have been allowed.

Assuming that an appeal can be taken from the denial of the defendant's motion, see *Cesarone* v. *Cesarone,* 329 Mass. 217, 219 (1952), it is well settled that a request to enlarge a report of material facts is a matter for the discretion of the trial judge. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 214-215 (1931). *Fields* v. *Paraskis,* 318 Mass. 726, 727-728 (1945). *Vergnani* v. *Vergnani,* 321 Mass. 699, 701 (1947). *Cesarone* v. *Cesarone, supra.* As was said in *Fields* v. *Paraskis, supra,* at 727-728, "[T]he material facts that a judge . . . may be required to report are facts that the

---

[3] The motion included suggested findings on the following subjects: the substance and source of the sworn testimony introduced at the hearing; the basis for the judge's findings relating to the defendant's ability to pay the $1,580 and to his acts allegedly violating the restraining order; and the civil or criminal nature of the contempt proceedings.

judge acting in good faith thinks material to the decree entered by him and that form the basis for it, and not facts material merely to the case in some aspect of it. This is fully explained in our decisions. . . . The right of an appellant to require a report of material facts is not a right to catechize the judge, or to require him to deal specifically with alleged facts selected by the appellant. The appellant must accept the report that the judge makes, and argue his appeal upon that report together with the rest of the technical record, which does not include the evidence unless the appellant has taken the precaution of seasonably requiring, and thereby making part of the record, a report of the evidence under G. L. (Ter. Ed.) c. 214, § 24, or c. 215, § 12."[4]

We emphasize this last point. If the defendant wished to have a review of the facts found by the probate judge, whether because he claimed that they were inadequate or that they were plainly wrong in light of the *competent* evidence presented, he should have taken the necessary steps before the hearing to have a stenographer appointed and the evidence reported. See G. L. c. 215, § 18; Rule 18 of the Probate Court (1959). Absent a report of the evidence, an appellate court is bound by the facts reported.[5] We must accept the report as including all the facts considered material by the judge to his decision, and cannot infer the existence of other facts not included therein. And we must accept the facts found as true unless the report itself indicates that they are mutually inconsistent or plainly wrong. If they are not, the only question before us is

---

[4] Although the *Fields* case was in equity and involved a report requested under G. L. c. 214, § 23, rather than one requested of a probate judge under G. L. c. 215, § 11, the general principles governing appellate review are the same in both instances. See G. L. c. 215, § 12 (now repealed by St. 1973, c. 1114, § 67, effective July 1, 1974).

[5] While it is true that this court has the power to remand a case for a further report of material facts, see G. L. c. 231, § 125A, the judge who originally sat on this case is no longer sitting as a judge of the Probate Court. Furthermore, given the fact that the contempt proceeding was held over two years ago, we do not accept the suggestion of the defendant that this court itself seek additional evidence. See G. L. c. 231, § 125. (This section has been amended by St. 1973, c. 1114, § 204, effective July 1, 1974.)

whether the decree entered was supported by the material facts reported. *Sidlow* v. *Gosselin,* 310 Mass. 395, 397-398 (1941). *Thompson* v. *Thompson,* 312 Mass. 245, 246-247 (1942). Cf. *Brooks* v. *National Shawmut Bank,* 323 Mass. 677, 680-681, 684-685 (1949). We hold there was no error in the judge's denial of the defendant's motion to enlarge the report of material facts.

2. The failure to have the evidence reported similarly precludes us from considering the defendant's claim that he was denied due process of law by the judge's reliance on unsworn testimony and evidence from outside the hearing in his report of material facts.

It is clear that "due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." *In re Oliver,* 333 U. S. 257, 275 (1948). See *Cooke* v. *United States,* 267 U. S. 517, 536-537 (1925); *Crystal, petitioner,* 330 Mass. 583, 588-589 (1953); *Garabedian* v. *Commonwealth,* 336 Mass. 119, 124-125 (1957). If, as the defendant asserts, the judge did admit in evidence and rely on unsworn statements of the plaintiff's counsel over objection of the defendant's counsel at the hearing, some of these procedural rights may have been violated. Reliance by the judge on information gathered outside the hearing would also be improper. *Garabedian* v. *Commonwealth, supra,* at 125. *Day* v. *Crowley,* 341 Mass. 666, 669-670 (1961). *Ferriter* v. *Borthwick,* 346 Mass. 391, 393 (1963).

However, there is nothing in the report which identifies or indicates the source of the evidence on which the judge relied. Cf. *Ferriter* v. *Borthwick, supra.* Without such an indication and absent a report of the evidence, we are, as stated above, bound by the report of material facts. Questions about the admissibility of evidence are not open. See *Wiley* v. *Fuller,* 310 Mass. 597, 604 (1942). This is not a

case like *Garabedian* v. *Commonwealth, supra,* where the alleged contemnor had no opportunity to secure the services of a stenographer. *Id.* at 125-126.

3. The defendant argues that he was denied due process of law for the additional reason that the notice he received of the contempt hearing was defective.

The acts for which the defendant is charged with contempt relate solely to his alleged noncompliance with the support order and related orders of May 18, 1971. It is obvious that none of these acts was committed in the presence of the Probate Court, and there is no suggestion that the defendant committed any acts which were an affront to the judge or the court during the contempt hearing. It is without dispute that, as the defendant states, "Due [p]rocess requires that a . . . [defendant] must be given notice of the charges against him prior to a hearing on criminal or civil contempt whenever the allegedly contemptuous conduct occurred outside the presence of the Court." See *Cooke* v. *United States,* 267 U. S. 517, 536-537 (1925); *Parker* v. *United States,* 153 F. 2d 66, 70 (1st Cir. 1946); *Crystal, petitioner,* 330 Mass. 583, 588-589 (1953); *Garabedian* v. *Commonwealth,* 336 Mass. 119, 123-124 (1957). Such requirements of notice were adequately met in this case at least as to the charge relating to the defendant's failure to make weekly support payments.

The citation served on the defendant, while itself containing no specific information as to the allegations of nonpayment, did inform him that the plaintiff had filed a petition for contempt which charged him with failure to obey a court decree of May 18, 1971. It is clear that he was at least aware of that part of the May 18 decree relating to support, for the record shows he had been making some payments thereunder between the time it was entered and the contempt hearing on February 3, 1972. The citation was served twenty days before the scheduled hearing date, giving the defendant sufficient time to seek the aid of an attorney, which in fact he did, although belatedly. Moreover, the record shows that the defendant appeared at the hearing on February 3, 1972; that he knew his support

payments to the plaintiff were at issue;[6] and that the parties agreed the defendant owed $1,580 under the support order before the hearing began. If the defendant was not aware of or was unprepared to defend against the charges alleging nonpayment, his counsel could have moved for a continuance of the hearing or for specification of the charges. It does not appear that he did so. On these facts we conclude that the defendant had adequate notice that he was being charged with failure to pay the previously ordered support payments and that he has waived the deficiencies, if any, in such notice. See *Woodbury* v. *Commonwealth,* 295 Mass. 316, 324 (1936).

It is less clear that the defendant received adequate notice of the charges pertaining to alleged violations of the restraining order. The citation contained no information about these charges and the plaintiff's contempt petition merely charged that the defendant "ha[d] also violated the terms of the restraining order by his actions on December 10, 1971 and other divers dates." No specific acts were described. It does not appear from the report of material facts or from any affidavits included in the record that the defendant knew, prior to the beginning of the hearing, where, when, or in what manner he had violated the order. Cf. *Woodbury* v. *Commonwealth, supra,* at 323-324. We conclude that in these circumstances the contempt charges against the defendant should be limited to those relating to his failure to make support payments.

4. The next question is whether the contempt at issue, as thus limited, should be treated as civil or criminal contempt. The distinction between the two has been treated extensively elsewhere[7] and it is not necessary to discuss it in detail here. Suffice it to say in general terms that the

---

[6] An affidavit of the defendant's counsel included in the record indicates that the defendant himself brought two witnesses to the hearing to testify about his payments.

[7] See *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 441-445 (1911); *Shillitani* v. *United States,* 384 U. S. 364, 368-370 (1966); *Parker* v. *United States,* 153 F. 2d 66, 70 (1st Cir. 1946); *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 346-347 (1946). See also *Bloom* v. *Illinois,* 391 U. S. 194 (1968); *Codispoti* v. *Pennsylvania,* 418 U. S. 506 (1974); *Taylor* v. *Hayes,* 418 U. S. 488 (1974).

purpose of civil contempt is remedial: its aim is to coerce the performance of a required act by the disobedient party for the benefit of the aggrieved complainant. The purpose of criminal contempt, on the other hand, is punitive: its aim is to vindicate the court's authority and to punish the contemnor for doing a forbidden act or for failing to act as ordered.

We note that there was no indication in this case — either in the contempt petition, the citation received by the defendant, or the report of material facts — whether the contempt charged was civil or criminal. Because the defendant did not receive adequate notice of the fact that criminal contempt was involved, we conclude that this case should be treated as one involving civil contempt alone. See *Parker* v. *United States, supra; Matter of Mann,* 126 F. Supp. 709, 710 (D. Mass. 1954). See also *Gompers* v. *Bucks Stove & Range Co., supra,* at 446.[8]

5. The question remaining is whether the sentence imposed on the defendant for such contempt violates his right to due process of law.

When a person judged in civil contempt is ordered to pay a compensatory sum of money he may not be sentenced to prison if he shows that he is unable to comply. To do so would be a denial of due process of law. *Maggio* v. *Zeitz,* 333 U. S. 56, 72-73 (1948). *Shillitani* v. *United States,* 384 U. S. 364, 371-372 (1966). *Parker* v. *United States,* 153 F. 2d 66, 70 (1st Cir. 1946). *Matter of Mann, supra.* In this case, however, the judge found that the defendant was capable of meeting the arrears of $1,580 and his findings were sufficiently supported by subsidiary facts. In these circumstances a jail sentence to coerce compliance was proper. While the defendant argues that there was little or no

[8] Apart from the question of notice, the terms of the sentence imposed on the defendant indicate a remedial purpose characteristic of civil contempt: he was ordered to pay the specific sum of money then due to the plaintiff under the support order and he could end his ninety-day jail sentence at any time before its completion by paying such sum. Other jurisdictions treat contempt proceedings to enforce these types of support orders as civil. See, e.g., *People* v. *Elbert,* 287 Ill. 458, 463-464 (1919); *State* v. *Chaffman,* 15 N. J. Super. 492, 498 (1951). Dicta in prior cases of this court suggest the same result. See *Root* v. *MacDonald,* 260 Mass. 344, 355 (1927); *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 (1927).

evidentiary support for the judge's finding presented at the hearing, again we are limited in considering these contentions by the lack of a report of the evidence.[9] On the basis of the report of material facts before us, we hold that there was no error in sentencing the defendant to serve ninety days in jail with his earlier release conditioned on paying the $1,580 due.

The hearing on the contempt petition and the imposition of the sentence at issue here occurred over two years ago. The defendant at that time served sixty-two days of his jail sentence. There is no indication that he paid any part of the $1,580 due to his wife or that he has done so since then. However, the defendant's circumstances, as well as the plaintiff's, and their respective positions in relation to the underlying decree for separate support and the restraining order, may have changed significantly in the two years since the hearing. It seems clear that a reëvaluation of the parties' circumstances is necessary. It appears from the record that on April 10, 1972, the probate judge ordered this case to be continued generally for further disposition. Accordingly, we remand the case to the Probate Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[9] For the same reason, we cannot consider the defendant's further argument that he presented to a single justice of this court on February 23, 1972, and again to the probate judge on April 20, 1972, sufficient evidence of his inability to comply with the order of payment to require his release from jail. The record does not contain any indication that findings were even made on these occasions, much less that the evidence was reported. There is nothing in the record to suggest that this is a case in which proof of inability to pay after imprisonment due to changed circumstances requires the release of the contemnor from jail. Cf. *Matter of Mann, supra.*