MARIA MERANTO *vs.* SAMUEL R. MERANTO.

Worcester.   December 6, 1974. — January 31, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Contempt.*

A civil contempt decree sentencing the libellee husband in a divorce case to jail for violation of a decree nisi was reversed where neither the contempt petition nor the record established that he knew prior to the beginning of the hearing, where, when or in what manner it was claimed that he violated the decree nisi. [723-725]

LIBEL for divorce filed in the Probate Court for the county of Worcester on March 25, 1971.

A contempt petition filed on August 9, 1972, was heard by *McClellan*, J.

*Conrad W. Fisher* for the libellee.

*James G. Reardon* for the libellant.

BRAUCHER, J.   A wife filed a libel for divorce against her husband. After a decree nisi had been entered, it was vacated by consent of both parties and the libel was dismissed without prejudice. Thereafter, on the wife's petition served by publication, the consent decree was revoked and the decree nisi reinstated. The husband has now been found guilty of contempt of the decree nisi and sentenced to jail for six months, "until he shall purge himself of his said contempt by complying with said decree." Largely because of the husband's insistence on proceeding without counsel, the contempt proceedings, in the words of the judge, "were so unusual and so bizarre that I have never quite heard anything like it." We reverse the contempt decree and remand the case to the Probate Court for further proceedings consistent with this opinion.

The original libel for divorce was filed on March 25, 1971. On October 1, 1971, a decree nisi was entered giving the wife custody of the six minor children of the parties, ordering the husband to pay $150 a week for the support of the children, plus medical and dental expenses, and permitting the wife and children to occupy the home place in Grafton and use the furniture and furnishings therein. Rights of visitation were reserved for later determination, and the husband was prohibited from entering the home premises.

About one month later, on November 9, 1971, on the petition of both parties, the decree absolute was stayed, the decree nisi vacated, and the libel dismissed without prejudice. After nearly another month, on December 3, 1971, the wife filed an unverified "petition to vacate stay of decree absolute," and notice was given by publication. On January 10, 1972, a decree was entered revoking the decree of November 9, 1971, and "making the decree nisi effective

as of this date, together with the provisions of divorce granted on October 1, 1971."

On August 9, 1972, the wife filed a petition that the husband be cited to appear and show cause why he should not be adjudged in contempt for his failure to obey the decree of October 1, 1971, alleging that the husband had not made payments on time, had "threatened by telephone calls, refused her to occupy the Grafton Premises," and was interfering with the children and the wife's personal life. Testimony was taken on March 5, 1973, and a decree was entered the same day that the husband was guilty of contempt and was committed to jail "for the term of six months — until he shall purge himself of his said contempt by complying with said decree and [paying] the costs of said commitment or until the further order of this Court or until he be otherwise discharged by due course of law, and that a mittimus issue accordingly." The husband appealed. The testimony is reported, and the judge made a report of material facts.

We summarize the report of material facts. After several continuances and changes of counsel representing the husband, he appeared without an attorney and despite contrary advice insisted on proceeding pro se. Not only did he refuse to allow the wife and children to have the use and occupancy of the home place, but he moved into the premises in violation of the decree of January 10, 1972, intimidated the wife, threatened her, and "used abusive language and uttered epithets at her." She finally moved out and he continually refused to allow her to occupy the premises. He also removed the furniture and prevented her from using it. The "aforesaid decree was never modified by the respondent," and he "controls the said premises in his capacity as trustee of Washington Realty Trust."

While the reported testimony includes testimony supporting the judge's findings, it indicates as well that the husband was not able to present his case in a coherent fashion. Counsel for the wife called the husband as his first witness, and began his examination by reading from the decree of October 1, 1971, stating that he was reading from

the decree dated January 10, 1972. The husband tried to say that he had vacated the premises "at the time that that was drawn up, your Honor, but we went back together . . .." The judge intervened, "Just answer his questions." The husband's testimony thereafter consisted in substantial part of statements by counsel for the wife, punctuated by denials and expressions of confusion and frustration by the husband. When he tried to say that his wife had all the furniture, he was cut off by counsel for the wife: "Please, sir. There is no other question before you." The husband's attempt to cross-examine himself began, "I had kind of prepared what I was going to say." He was so thoroughly interrupted by counsel for the wife and by the judge that he managed to say nothing of significance until the judge examined him as to the ownership of the home place in Grafton.

The wife's testimony followed, consisting in large part of lengthy statements by her counsel, punctuated by her expressions of acquiescence. The husband's cross-examination yielded very little except a ruling by the judge that inquiry into her complaints as to the husband's threats were not germane to the contempt petition, and except her testimony that if she received that week's check his support money would be paid up to date. At the conclusion of her testimony the judge ruled that testimony as to the fact that the husband went into the house and took the children was not germane, and indicated an intention to hold him in contempt and send him to jail. The husband then said, "Maybe I can get an attorney, your Honor?" The judge sustained the objection of counsel for the wife, and imposed sentence.

We note first that the decree of January 10, 1972, was irregular on its face in that it purported to reinstate the terms of a decree which previously had been dismissed without prejudice. However we do not pass on the validity of the decree of January 10, 1972, because we reverse the contempt decree on other grounds.

It is not clear from a reading of the contempt petition, the decree, or the report of material facts whether the contempt

charged here was civil or criminal. In these circumstances we follow *Sodones* v. *Sodones, ante,* 121, 130 (1974), where we stated: "Because the defendant did not receive adequate notice of the fact that criminal contempt was involved, we conclude that this case should be treated as one involving civil contempt alone." Were we to treat this case as one involving criminal contempt, we would hold that there had not been an effective waiver of counsel by the husband since the record does not include a showing of compliance with S. J. C. Rule 3:10, as amended, 355 Mass. 803 (1969), on waiver of counsel in criminal cases. See *Mulcahy* v. *Commonwealth,* 352 Mass. 613, 615 (1967); *Cardran* v. *Commonwealth,* 356 Mass. 351, 353 (1969); *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 368 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972). Moreover, it would be highly improper in a criminal proceeding to call a defendant as a witness against himself. *Alves* v. *Braintree,* 341 Mass. 6, 9 (1960).

A person cited for contempt, civil or criminal, must be given notice of the charges against him prior to the hearing on the citation. *Sodones* v. *Sodones, supra,* at 128, and cases cited. There was here no description of specific acts in the petition, with the exception of the allegation of late support payments, and nothing in the record shows that the husband knew, prior to the beginning of the hearing, where, when, or in what manner it was claimed that he had violated the provisions of the decree of October 1, 1971. We follow our holding in *Sodones* v. *Sodones, supra,* where in a somewhat similar fact situation we concluded that the contempt charges against the husband should be limited to those relating to his failure to make support payments. *Id.* at 129. As so limited the finding of contempt in this case was plainly wrong since, so far as appears, the husband's payments were substantially up to date, and the report of material facts makes no reference to defaults in support payments. If the intention was to coerce him to admit the wife and children to the home place in Grafton, that should have been spelled out both in the petition and in the decree.

The decree holding the husband in contempt is reversed, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*