KATHLEEN FRANCES AINSLIE *vs.* HARRY PHILLIP AINSLIE.

Middlesex.    June 6, 1978. — November 21, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Contempt.*

A criminal contempt decree sentencing the husband in a divorce case to jail for violation of a temporary order requiring him to pay for support of his wife and minor child was reversed where neither the contempt petition nor the judgment established anything more than his failure to make the payments. [693–696]

CIVIL ACTION commenced in the Probate Court for the county of Middlesex on August 24, 1976.

A contempt petition filed on April 6, 1977, was heard by *Martin, J.*

*Anthony L. Mancini* for the defendant.

GOODMAN, J. The plaintiff, Kathleen Ainslie, in a pending action for divorce, brought a complaint for contempt, alleging the entry of a temporary order, dated December 22, 1976, which required the defendant, Harry Ainslie, to pay $75.00 per week as support of the plaintiff and their minor child and to pay for certain other items. The complaint further alleged that the "[d]efendant has not obeyed that order and there now remains due and unpaid to plaintiff the sum of $150," and that he "has violated

the order ... by failure to pay [various other listed items]." The complaint for contempt was filed on April 6, 1977, and was made returnable on July 11, 1977. The matter was continued to July 20, 1977, when the probate judge made the notation set out in the margin[1] and continued the case to August 11, 1977. On that date the case came before another judge, who continued it to September 29, 1977, when the original judge entered a judgment set out in pertinent part in the margin.[2] The defendant filed a notice of appeal and a statement of the evidence, to which the plaintiff agreed and which was approved by the judge subject to an addendum which he filed. Mass.-R.A.P. 8(c), 365 Mass. 850 (1974). See *King* v. *King*, 373 Mass. 37, 39 (1977; *Renda* v. *Gouchberg*, 4 Mass. App. Ct. 786 (1976). The sentence was stayed, pending disposition of the appeal, by a Justice of this court. We reverse the judgment.

From the face of the judgment and the complaint on which it was issued, it is clear that the judgment is not properly for criminal contempt, since its sole basis appears to be that the defendant refused to make the payments required by the order and that he had the ability to do so. That basis would justify a jail sentence for civil contempt to coerce compliance by which the contempt would be purged. *Sodones* v. *Sodones*, 366 Mass. 121, 130 (1974). Cf. *Shillitani* v. *United States*, 384 U.S. 364, 369–

[1] "D[efendant] advised that, in view of flagrant disregard of Court order, case would be considered as Criminal Contempt; case continued to Aug 11, 1977; D[efendant] advised that he is to be present in Court on 8/11/77, with Counsel, prepared to defend a charge of Criminal Contempt inasmuch as there was a likely possibility that a jail sentence would be imposed."

[2] The judgment states: "After hearing, it is adjudged that defendant is guilty of contempt of this court for having willfully failed and refused to obey its order of December 22, 1976, in that ... Defendant in arrears $1348.00 as of September 29, 1977; Defendant held to be in Criminal Contempt for refusal to obey Court order to pay the sum of $75.00 to support plaintiff and minor child, despite continuing ability to make such payments. Sentence thirty (30) days."

370 (1966). But, like the violation of the injunction in *Root* v. *MacDonald*, 260 Mass. 344, 358 (1927), the reasons stated in the judgment do not "go so far as to show acts in willful defiance of the authority and power of the court, except as failure to conform to any lawful order of a court partakes to some extent of defiance." In the *Root* case the court pointed out in dicta (referred to in the *Sodones* case, 366 Mass. at 130 n.8) that as to the enforcement by contempt of orders for separate support, alimony, and the like, "[i]t has never been supposed that these classes of contempt were criminal as commonly administered." 260 Mass. at 355. The *Sodones* case, 366 Mass. at 130 n.8, also refers to dicta in *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 373 (1927), in which the court said, "The use of that process [attachment for contempt] . . . concerning separate support, alimony, support of children and other aspects of domestic relations, has never been regarded as partaking of criminal features. Contempt proceedings to that end are remedial and coercive . . . not of a criminal nature." The *Blankenburg* case involved an adjudication of criminal contempt "by wilful and intentional perjury . . . during the trial of a petition for the allowance of a will." 260 Mass. at 371. The Supreme Judicial Court pointed out that in such a case the contempt proceedings were "exclusively punitive . . . designed wholly to punish an attempt to prevent the course of justice" in contrast to contempt "in aid of distinctively probate jurisdiction." 260 Mass. at 373.

The complaint, like the judgment, does not set out any "special elements of contumacy." *Cherry* v. *Cherry*, 253 Mass. 172, 175 (1925), quoting *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911). *Root* v. *MacDonald*, 260 Mass. at 358 (no "distinctively criminal feature"). The judge's notation of July 20, 1977 (see footnote 1, *supra*), that the proceeding was to be treated as criminal contempt does not cure the difficulty in the complaint; it does not serve to give the defendant notice of "specific acts" which can serve as a basis for criminal contempt

proceedings. *Meranto* v. *Meranto*, 366 Mass. 720, 724 (1975). See *School Comm. of New Bedford* v. *Dlouhy*, 360 Mass. 109, 117 (1971).

We do not imply (and we do not decide the point) that there may not be conduct which falls short of the commission of a crime—such as the perjury in the *Blankenburg* case—but which so colors the failure to pay by one who has the ability as to permit a finding beyond a reasonable doubt (*Root* v. *MacDonald*, 260 Mass. at 366, citing *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. at 444, and *Michaelson* v. *United States*, 266 U.S. 42, 66 [1924]) of such interference with or manipulation of the judicial process, beyond the disregard of a court order as to warrant punishment for criminal contempt. There is no indication here of such conduct either in the judgment or in the complaint. See *Langford* v. *Langford*, 253 Miss. 483, 485 (1965); 53 A.L.R.2d 591, 617–618 (1957).

We have also examined the statement of the evidence and addendum to determine whether they can vindicate the judgment.[3] Our examination of these documents indicates nothing beyond the failure to pay; indeed, we see no foundation for the statement in the judgment that the defendant has a "continuing ability" to make the payments. The house which the defendant owns with the plaintiff as tenants by the entirety and which is mentioned in the addendum to the statement of evidence is occupied by the plaintiff and the minor child of the parties. Further, the judge has appointed a receiver of the defendant's interest in the house for the purpose of establishing a lien for unpaid amounts under the order, thereby placing the property in the custody of the court. *Hills*

---

[3] We are, of course, not bound by the failure of the parties to include these documents in the appendix, though we are not required to go beyond the appendix. Mass.R.A.P. 18(a), 365 Mass. 864 (1974). See *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 150 (1976); *Sussman* v. *Commonwealth*, 374 Mass. 692, 693 n.2 (1978), citing *Callahan* v. *Callahan*, 345 Mass. 244, 245 (1962). Cf. *Kunen* v. *First Agricultural Natl. Bank of Berkshire County*, ante 684 (1978).

v. *Parker,* 111 Mass. 508, 510 (1873). *Boston Penny Sav. Bank* v. *Boston & Maine R.R.,* 244 Mass. 488, 491 (1923). Thus, neither practically nor legally is the house an asset of which the defendant could have availed himself to make the payments. This case is much like that of *Salvesen* v. *Salvesen,* 370 Mass. 608, 611 (1976), where there was also a failure to evidence of any capability to pay. Accordingly there is neither a foundation for criminal contempt nor, for that matter, for imprisonment for civil contempt. *Sodones* v. *Sodones,* 366 Mass. at 130.[4]

The judgment is reversed, and the case is remanded to the Probate and Family Court Department for further consideration of the defendant's present circumstances. See *Sodones* v. *Sodones,* 366 Mass. at 131.

*So ordered.*

---

[4] The parties and the trial judge have assumed that review of the judgment in this case, though characterized as for criminal contempt, is by appeal rather than by writ of error. See *Root* v. *MacDonald,* 260 Mass. at 355; *Blankenburg* v. *Commonwealth,* 260 Mass. at 373. We have treated the case on that footing, confining ourselves to the substantive issues. *Commonwealth* v. *McHugh,* 326 Mass. 249, 275 (1950). *Nickerson* v. *Dowd,* 342 Mass. 462, 465 (1961), and cases cited. *People* v. *Elbert,* 287 Ill. 458, 464 (1919). See *Salvesen* v. *Salvesen,* 370 Mass. at 611. Cf. *Hansen* v. *Commonwealth,* 344 Mass. 214, 216 (1962).