## Hannah B. Aroesty *vs.* Irving Aaron Cohen.

No. 02-P-1509.

Middlesex. March 2, 2004. - October 4, 2004.

Present: Duffly, Kantrowitz, & Green, JJ.

*Contempt. Divorce and Separation,* Child support, Notice, Attorney's fees. *Notice,* Timeliness. *Practice, Civil,* Reconsideration, Attorney's fees.

There was no merit to the argument that the husband's notice of appeal from a contempt judgment in a divorce action was not timely filed. [217-219]

A proceeding on a contempt complaint filed against the husband in a divorce action was consistent with a civil but not a criminal contempt, notwithstanding the judge's finding that the husband was in criminal contempt, where the sole sanction imposed was a sentence that was terminable upon payment of amounts due to the wife, the adjudication and orders were remedial and coercive in nature, and the judge found that the husband had the present ability to pay [219-221], a finding that was sufficiently supported by the evidence [221].

This court vacated an award of attorney's fees as part of a contempt judgment in a divorce action, where the award inappropriately included fee amounts for services rendered to address issues raised in an earlier complaint for contempt and for efforts to convert the action into one for criminal contempt. [221-222]

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on August 11, 2000.

Complaints for contempt, filed on February 22, 2000, and August 14, 2000, were heard by *Judith Nelson Dilday,* J.

*Gerald L. Nissenbaum (Wendy J. Overbaugh* with him) for the plaintiff.

*Charles R. Capace* for the defendant.

Duffly, J. Irving Aaron Cohen was adjudged in contempt for failing to contribute to the educational expenses of his children as required by a judgment of divorce. The judgment purports to hold Cohen in civil as well as criminal contempt and he appeals, arguing that as to the criminal contempt, certain

constitutional guarantees of due process were violated, warranting reversal of the judgment of criminal as well as civil contempt.[1] Because the nature of the proceeding and the judgment were consistent with a civil but not a criminal contempt, we vacate the judgment insofar as it holds Cohen in criminal contempt but affirm the judgment holding him in civil contempt. We deny Aroesty's motion to dismiss the appeal.

1. *Proceedings.* The parties' twenty-three year marriage ended in divorce, following a two-day trial in September, 1999. The January 4, 2000, divorce judgment,[2] from which neither party has appealed, requires Cohen to pay Aroesty $850 per week in child support for the parties' children — two minors and an eighteen year old about to attend college.[3] The judgment and findings reflect the parties' stipulation that "[i]t is in the best interest of the children . . . to continue their education at their respective parochial schools because of their learning disabilities and to maintain continuity in their lives." As also reflected in the findings and judgment, the oldest child had been accepted to Boston University, and Aroesty was ordered to take steps to determine whether the child could attend Brandeis University (where Aroesty was employed) without charge or on a reduced-tuition basis. The parties were to cooperate in seeking financial aid and scholarships for college and private school. After applying the proceeds from various sources of aid and scholarships,

---

[1]Specifically, Cohen claims that he was (1) not informed that the proceeding would be criminal in nature; (2) called to testify against himself; (3) denied the right to competent counsel; (4) denied a trial by jury; and (5) not given a reasonable opportunity to meet the charges against him. He also claims there was error in the findings and the admission of evidence; the burden of proof was erroneously applied; and the award of attorney's fees was unreasonable.

[2]The docket reflects that a judgment nisi dated November 18, 1999, was entered on November 24, 1999. The judgment was vacated on January 4, 2000, and a new divorce judgment issued "as of November 18, 1999." This new judgment, entered on the docket on June 29, 2000, see note 5, *infra*, is identical to the first except that it provides for incorporation of "a permanent Chapter 208, Section 18 Restraining Order against the husband" whereas the vacated judgment referred to "a permanent Chapter 209A Restraining Order."

[3]Cohen, an attorney practicing primarily in the field of real estate law, was earning $132,000 per year at the time of the divorce, $30,000 less than his earnings for the preceding year. His income had been twice that for the years 1993 through 1995. At the time of the divorce, Aroesty was earning $42,000 per year as assistant director of annual funds at Brandeis University.

Cohen was to pay sixty percent and Aroesty forty percent of the balance of the children's private school and college expenses. They were to share equally the costs of the children's uninsured medical expenses.

A complaint for contempt filed by Aroesty and dated February 22, 2000, alleged, among other things, that Cohen had failed to pay child support and his share of the children's uninsured medical expenses, and that he had not cooperated in applying for financial aid for the younger children's private school costs and the oldest child's college expenses. The parties' stipulation, incorporated in a temporary order dated March 27, 2000, acknowledges Cohen's payment of $4,250, and provides that Cohen will promptly complete financial aid applications and submit required documentation. He also agreed to pay $4,500 in attorney's fees incurred by Aroesty in connection with that contempt proceeding, at the rate of $375 per month.

On August 14, 2000, Aroesty filed the complaint for contempt that is the subject of this appeal. She alleged that Cohen had not paid child support nor his share of medical expenses, and that he had failed to contribute his sixty percent share of the children's private school and college costs. Cohen filed a timely answer to this complaint.

A hearing as to both complaints for contempt took place on September 11, 2000, before a different judge from the one who had presided over the divorce trial, and Cohen was ordered to pay the child support arrearages and medical expenses. Cohen sought an evidentiary hearing on the issues of his failure to pay nearly $50,000 as his share of the children's education expenses, and his ability to pay such expenses. Trial of these issues was referred to the judge who had presided over the divorce.

Aroesty filed a motion, dated September 21, 2000, seeking leave to amend the August 14, 2000, contempt complaint to include a request that Cohen be found in criminal contempt. The motion refers to an attached proposed order, but no order appears in the record. Following a trial, conducted on October 4, and December 18, 2000, Cohen was adjudged in contempt.

2. *Discussion.* a. *Timeliness of appeal.* Aroesty's claim that the appeal must be dismissed because notice of it was not timely

filed assumes, incorrectly, that the contempt judgment was entered on August 13, 2001.

The contempt judgment (which is designated as "Event No. 15" on the docket) was rendered on August 13, 2001, and notice of it sent to the parties soon after.[4] Pertinent to our determination is the fact that the contempt judgment was not entered on the docket until June 25, 2002. See Mass.R.Dom.Rel.P. 79(a) (clerk, or register if in Probate Court, is to make entry of judgment; such "entry of an order or judgment shall show the date the entry was made"). Whether Cohen's notice of appeal was timely depends on the date the notice was filed, and whether that date was within thirty days of June 25, 2002, the date the judgment was entered. See Mass.R.A.P. 4(a), as amended, 395 Mass. 1110-1111 (1985). The clerk of the lower court is required to "note on each copy [of the notice of appeal] served the date on which the notice of appeal was filed." Mass.R.A.P. 3(d), 365 Mass. 845 (1974). Cohen's notice of appeal from the contempt judgment contains this initialed notation in the bottom margin: "Filed June 25, 2002." It was entered on the docket on that date as "Event No. 49."

We conclude that Cohen's notice of appeal — accepted for filing on June 25, 2002, after entry of the judgment (as reflected by the numerical order of the events on the docket, see Mass.R. Dom.Rel.P. 79[a]) — was timely.[5]

That Cohen also filed a motion seeking reconsideration of the

[4]Neither the date the judgment was rendered nor the date notice was sent to the parties is relevant to our determination. See *Brown* v. *Quinn*, 406 Mass. 641, 643 (1990) (provision that clerk is to send notice is merely for the convenience of litigants and does not relieve the parties of their procedural obligations); *Standard Register Co.* v. *Bolton-Emerson, Inc.*, 35 Mass. App. Ct. 570, 571-572 (1993) ("Time for filing the [notice of appeal] did not run from the date when the judgment was rendered . . . but from the date of the entry of that judgment on the docket").

[5]The notice of appeal also contains a handwritten date in the right margin, "9/11/01," that is not initialed. If the notice had been filed on that date, see Mass.R.Dom.Rel.P. 77(d), it would have been premature. See Mass.R.A.P. 4(a). It is apparent that assignment of the June 25, 2002, filing date — which appears to have no bearing on the actual date on which the notice of appeal was received by the court — was made to avoid any unfair consequences resulting from the delay in recording the judgment. It would of course have been better had the judgment been entered as required by Mass.R.Dom.Rel.P. 58 (requiring judgment to be prepared "forthwith," "promptly" approved, and

judgment has no bearing on our decision. "[A] motion for reconsideration is not the equivalent of a rule 59 motion (or any of the other motions enumerated in Mass.R.A.P. 4[a])," *Curly Customs* v. *Pioneer Financial, ante* 92, 96-97 (2004), and his filing of the motion thus had no effect on the timeliness of the notice of appeal.

b. *Criminal contempt.* Some of Cohen's claims as to the deficiencies in the criminal contempt proceeding have merit,[6] whereas others are without basis.[7] However, we need not address these claims because it is apparent that, notwithstanding the judge's finding that Cohen was in criminal contempt, the proceeding was in the nature of a civil contempt.[8]

The judgment from which Cohen appeals provides: "The Defendant is found guilty of both civil and criminal contempt of Court. He is sentenced to jail for sixty (60) days or until he purges himself of all of these Contempts of Court." Despite the reference to a "criminal" adjudication of contempt, however, the sole sanction imposed on Cohen was a sentence that was terminable upon payment of the amounts due to Aroesty. That sentence was suspended for seven weeks, at the end of which the parties were to appear at a hearing "to report on the status of payments." It appears that the adjudication and orders were

thereupon entered), and we do not condone the practice of adjusting filing dates, however benign the motivation. See *Standard Register Co.* v. *Bolton-Emerson, Inc.,* 35 Mass. App. Ct. at 574. Nonetheless, the force of the rule is to "facilitate adjudication on the merits." *Ibid.* This purpose was not thwarted, and in this case, the parties were not prejudiced by the practice.

[6] It is highly unlikely that a motion to amend that was not acted on will in any circumstances provide sufficient notice to a defendant that the proceeding is to be criminal in nature. Assuming that notice was sufficient and that all the parties and the trial judge were thus aware that Cohen was "entitled to the protections normally accorded to criminal defendants under the law of the Commonwealth," *Furtado* v. *Furtado,* 380 Mass. 137, 142 (1980), Aroesty's attorney should not have been permitted to call Cohen as the first witness to testify against himself. *Ibid.*

[7] Regarding his asserted right to a jury trial, for example, it is settled that "[t]here is no constitutional right to a jury trial in a criminal contempt proceeding in which the penalty is six months' imprisonment or less." *Edgar* v. *Edgar,* 403 Mass. 616, 618 (1988).

[8] The August 14, 2000, contempt complaint is not designated as either a civil or criminal contempt, but because it seeks an order that Cohen "be held in the county jail until such time as he purges himself of this contempt," it is civil in nature. See discussion, *infra.*

remedial and coercive in nature and "intended to achieve compliance with the" divorce judgment. *Furtado* v. *Furtado,* 380 Mass. 137, 141 (1980). "[A] criminal contempt proceeding is 'exclusively punitive,' " *ibid,* quoting from *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 (1927), as exemplified by a sentence of imprisonment that is not purged upon payment of the sums owed. See *Root* v. *MacDonald,* 260 Mass. 344, 358-359 (1927) (classification of contempt as civil or criminal generally depends on nature of punishment; a remedy of imprisonment for refusing to do an act until the party performs the act is civil, while imprisonment for a definite term for doing the forbidden act is criminal). See also *Barreda* v. *Barreda,* 16 Mass. App. Ct. 918, 920-921 (1983).

Moreover, the probate judge found that Cohen had the present ability to pay, which is a prerequisite to a finding of civil, but not criminal, contempt. See *Sodones* v. *Sodones,* 366 Mass. 121, 130 (1974); *Salvesen* v. *Salvesen,* 370 Mass. 608, 611 (1976). Thus, "the contempt was dealt with civilly, and in no respect criminally." *Godard* v. *Babson-Dow Mfg. Co.,* 319 Mass. 345, 348 (1946).

Claiming that the proceeding was both criminal and civil, Cohen argues that the civil component of the judgment cannot be upheld because, in a contempt proceeding that is criminal even in part, the criminal feature is dominant and fixes the character of the trial. See *Furtado* v. *Furtado, supra* at 142. We think that Cohen's reliance on *Furtado* for this proposition is misplaced. Even supposing that the motion to amend had been acted on, and Cohen given notice that the proceeding would also be one for criminal contempt, counsel for Aroesty did not press at trial for a punitive sentence of imprisonment and the trial judge imposed only a remedial order (a sixty-day sentence that could be purged on payment). It is only when a defendant is properly subject to both a criminal and a civil sanction that the trial must afford the defendant all of "the protections normally accorded to criminal defendants under the law of the Commonwealth." *Ibid.* We also think that, even had Aroesty demanded that Cohen be punished in a manner consistent with that of a criminal contempt and the judge had imposed a jail sentence that was not subject to being purged on payment of the

amounts due to Aroesty, the civil judgment of contempt would survive. A civil contempt proceeding does not have the safeguards which attend a criminal contempt proceeding, and requires a lower burden of proof. As long as the requirements supporting a judgment of civil contempt have been met, as was the case here, the judgment will stand. See *Sodones* v. *Sodones*, 366 Mass. at 130; *Krokyn* v. *Krokyn*, 378 Mass. 206, 207 n.3 (1979). Contrast *Salvesen* v. *Salvesen*, 370 Mass. at 611.

c. *Civil contempt.* The trial judge found that Cohen, a real estate attorney and partner in a law firm, was earning "at [a] minimum," $120,000 per year, and did not credit his testimony that he was earning less. She also found that his assets "closely approximate[] the amount he owes for the Children's tuition." She was not required to accept as credible Cohen's testimony or that of his witnesses. *Johnston* v. *Johnston*, 38 Mass. App. Ct. 531, 536 (1995). The judge's findings that at the time the contempt judgment issued, Cohen had the present ability to pay the amounts due under the divorce judgment, were sufficiently supported by the evidence. *Sodones* v. *Sodones, supra* at 130.

d. *Attorney's fees.* The contempt judgment awarded Aroesty her attorney's fees in the amount of $37,543.13.[9] The award, made pursuant to G. L. c. 215, § 34A, is based entirely on the affidavit of Aroesty's attorney. Our review of that affidavit and the detail of time charges and expenses attached to it, indicates that the time period covered by the award includes the period from February 14, 2000, to December 21, 2000. Aroesty's complaint for contempt was not filed until August 14, 2000. The judgment is itself captioned "judgment on complaint for contempt filed August 14, 2000," and the issues raised in the February contempt complaint appear to have been addressed, in substantial part, by the parties' March 27, 2000, stipulation, which also provided for payment of Aroesty's attorney's fees to that point,[10] and by the September 11, 2000, order. The itemized

---

[9]Although Aroesty requested expenses as well as attorney's fees, only attorney's fees were awarded. The judge acknowledged in her rulings of law that G. L. c. 215, § 34A, permits an award of both.

[10]Aroesty's attorney deducted from his total time charges the $4,500 that the parties' had stipulated Cohen would pay in connection with the February contempt, but this does not entirely address our concern that the award was

charges also embrace the considerable amount of time expended on efforts to convert the action into one for criminal contempt.

We think that these were not amounts that appropriately should have been included in the award, and as a result, we will vacate the award and remand for findings and an award that reflects consideration of the conservative principles appropriate to an award of fees in these circumstances.[11,12] "This is not a case . . . in which responsibility, novelty, difficulty, unusual skill, standing at the bar, or spectacular results achieved need be placed in the equation." *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 665 (1986) (involving review of fees awarded in contempt action).[13]

---

too rich, because time charges and expenses for the period covered were well in excess of the $4,500, and are included in the award.

[11]If, on remand, expenses are awarded, see note 9, *supra*, such an award should be based on the same conservative principles as attorney's fees. We note that in addition to itemized expenses for service of summonses, stenographers, and the cost of sending facsimiles, which are passed on to the client, Aroesty's attorney charges "five percent of the hourly time each month as a general administrative fee," in lieu of itemized charges for expenses such as long distance telephone calls, local in-hand delivery, and postage. In connection with the subject contempt proceeding, this category of expense, identified solely as "general administrative," was $1,739.34. Even if the method employed by Areosty's attorney to recover expenses is one that prevails in the matrimonial bar (there is no indication in the record that it does), we are reluctant to approve it as reasonable when employed against one who has not agreed to it. Only the actual, reasonable costs of an expense that was reasonably incurred in connection with the prosecution of the civil contempt matter should be assessed against Cohen. See ABA Annotated Model Rules of Professional Conduct rule 1.5, comment [1] (5th ed. 2003) (attorney's charges for services performed in-house should reflect "a reasonable amount to which the client has agreed in advance or . . . an amount that reasonably reflects the costs incurred by the" attorney). Cf. Mass.R.Prof.C. 1.5, as amended, 432 Mass. 1301 (2000).

[12]We question the assumed reasonableness of a $5,000 "per diem" rate, reflected in the detail of services. In his affidavit, Aroesty's attorney states he charged her $350 per hour for work in, and $400 for work outside of, the office. Even assuming that those rates were reasonable for the work performed, because the per diem charge does not reflect the amount of time actually expended on Aroesty's behalf, nor the specific nature of the services rendered, the reasonableness of the charge cannot be assessed. See ABA Annotated Model Rules of Professional Conduct rule 1.5.

[13]The factors to be considered are set forth in *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 n.9 (1985), in which we quoted from *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933) (" 'In determining what is a fair

*Conclusion.* The motion to dismiss the appeal is denied. The judgment of criminal contempt is vacated. The order awarding attorney's fees is vacated and remanded "for a determination of the fees for the wife's attorney 'not incommensurate with an objective evaluation of the services performed.' " *DeMatteo* v. *DeMatteo,* 436 Mass. 18, 39 (2002), quoting from *Ross* v. *Ross,* 385 Mass. 30, 38-39 (1982). The judgment of civil contempt is otherwise affirmed.[14]

*So ordered.*

---

and reasonable charge to be made by an attorney for his services many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured. Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services' "). The award should not include time for services that was "identifiably duplicative or too generously expended, given the problem confronted," *Olmstead* v. *Murphy, supra* at 668, nor should the time expended — including for such expenditures as "conferences"; "telephone conferences"; "receipt" and "receipt and review" of letters, faxes, orders, and materials; "thinking about" and "considering" issues; travel to and from court to personally file motions and pleadings — be approved without careful gauging of the need and reasonableness of the effort expended.

[14]Aroesty's request for appellate attorney's fees and costs is denied.