*Peter B. Ellis* for the defendant.

ELEANOR M. BARREDA *vs.* ARTHUR B. BARREDA. June 8, 1983. *Divorce and Separation,* Child support, Modification of judgment. *Contempt.*

The husband appeals from a judgment of the Probate and Family Court adjudicating him in contempt of two 1978 orders which required

that he pay $200 a week in child support for the parties' four children as well as certain educational expenses. On appeal, he argues that the judgment must be treated as one for criminal contempt and that it must be reversed because: (1) there was no support order in effect when he failed to pay both weekly support and educational costs; and (2) there was no showing that he had the ability to pay at the time of either the nonpayments or the contempt judgment. We affirm.

The terms of the husband's support obligations were set out in the judgment of divorce nisi on February 24, 1978, and in an order, on June 7, 1978, modifying the manner but not the amount of payment. When the husband paid nothing, the wife commenced contempt proceedings. On August 2, 1979, the trial judge established the arrearages as of May 2, 1979, but found that "[i]t appearing that the [d]efendant does not have the present ability to pay the above arrearage of $4,400, he is not found to be in contempt."

The matter was continued until December, 1979, and on December 31, 1979, the husband was awarded custody of the children. The modified custody judgment was silent as to the husband's obligations under the 1978 support orders.

Notwithstanding the modification of custody, one child remained with the mother and one returned to her by October 11, 1980. The two other children did not live with the mother after December 31, 1979. From that date up to the conclusion of the instant contempt proceedings, the husband paid nothing for the support of his children. The mother received welfare assistance from December, 1978, to January, 1981.

At the time of the divorce nisi, the husband was earning $49,500 annually. In September, 1978, he left his employment to organize, with three other persons, his own company. His salary dropped to $20,000 a year, but since that time it has increased to $30,000, in addition to which he receives various benefits, such as an automobile and insurance. The husband also remarried in September, 1978, and he has two children by this marriage. He also contributes to the support of his present wife's child.

1. The husband claims that the trial judge's order of August 2, 1979, wherein the husband was found not to be in contempt due to his then present inability to pay, relieved him of all obligation to pay the arrearages (computed through May 2, 1979) then in issue. As the trial judge did not extinguish or otherwise modify the arrearages on August 2, 1979, see *Watts* v. *Watts*, 314 Mass. 129, 133 (1943); *Bloksberg* v. *Bloksberg*, 7 Mass. App. Ct. 233, 234-235 (1979), we will not conclude that another judge of the Probate Court was thereafter precluded by that order from consideration of whether the husband had since acquired the ability to pay the previously established arrearages. The husband's claim that

because the trial judge, on August 2, 1979, continued the complaint for contempt until December 3, 1979, he (the husband) was not required to pay child support up to and including that date, directly contradicts that part of the order specifically providing that "the [d]efendant is to continue his regular weekly payments on the [j]udgment of this Court, dated February 24, 1978."

2. Even assuming, as the husband argues, that his support obligation was suspended by the trial judge's order of December 31, 1979, which awarded him temporary custody of the children but made no provision concerning support, see *Creeley* v. *Creeley*, 258 Mass. 460, 463 (1927), his claim has no relevance. We note from the trial judge's detailed and comprehensive findings of fact on the present contempt complaints, and which the husband does not dispute except as they pertain to his ability to pay, that the husband's maximum liability for child support for the period during which he paid nothing, December 22, 1978, up to May 5, 1981, was $18,934, exclusive of educational expenses. In modifying that amount, *Bloksberg* v. *Bloksberg*, 7 Mass. App. Ct. at 234-235, the trial judge expressly stated that the husband was not being charged for those periods that each child resided with him, amounting to $7,734. We further note that the weekly payment arrearages ultimately fixed by the trial judge, $8,000, is equal to less than the sum of the previously established arrearages, ($4,400 as of May 2, 1979) and the amount that should have been paid from that date up to the change of custody on December 31, 1979, which amounts to $6,800.

3. The present contempt complaints appear to be on a standard form and demand that the husband appear "to show cause why he should not be adjudged in civil and/or criminal contempt of Court." See *Sodones* v. *Sodones*, 366 Mass. 121, 130 (1974). The judgment provides: (a) that the husband is to pay the educational costs in addition to seventy-five dollars a week which is to be applied against the $8,000 in arrearages (the husband's weekly support was reduced to one hundred dollars a week on his complaint for modification); (b) that the "hearing of [his] contempt be continued day to day"; (c) that the "defendant be committed" to jail for ninety days "until he shall purge himself of said contempt by payment of" the arrearages; and (d) that "this sentence . . . be suspended from day to day." The husband points to the fact of his suspended sentence of incarceration and argues that he has been adjudged to be in criminal contempt without a showing that he had the ability to pay at the time of his nonpayment. See *Furtado* v. *Furtado*, 380 Mass. 137, 144 (1980). "[T]he purpose of civil contempt is remedial: its aim is to coerce the performance of a required act by the disobedient party for the benefit of the aggrieved complainant. The purpose of criminal contempt . . . is punitive: its aim is to vindicate the court's authority and to punish the contemnor for doing a forbidden act or for failing to act as ordered." *Sodones* v. *Sodones*, 366 Mass. at 129-130. We think it obvious from the provisions

of the judgment that the husband was adjudged to be in civil contempt for remedial, coercive purposes, and the only question is whether he has the present ability to comply with the judgment. *Furtado* v. *Furtado*, 380 Mass. at 144.

4. In adjudicating the husband to be in contempt, the trial judge found that the husband, since December 27, 1978, "had the ability to support his children, if not in the amount of $200.00 a week, then at least in a lesser amount, but he paid nothing," and that he "had no justification for not paying any support." Upon a review of those portions of the transcript brought before us and of other materials appearing in the transcript, we find no error. See *Bullock* v. *Zeiders*, 12 Mass. App. Ct. 634, 636 (1981). In September of 1978, the husband left his employment, giving up an annual salary of $49,500, to form his own company in which he owns twenty-five percent of the stock. By April 25, 1981, his salary had increased from $20,000 to $30,000 a year. The corporation employs clerical help, and two other stockholders receive salaries similar to that of the husband. In addition, the stockholders have the use of automobiles, paid for by the corporation, which also pays for the husband's life and medical insurance. The corporation also has a medical expense reimbursement plan. See *Thomsen* v. *Thomsen*, 12 Mass. App. Ct. 1010, 1011 (1981). As earlier noted, the husband remarried in 1978; he has two children by his present wife and contributes to the support of her teenage son by a previous marriage. See *O'Brien* v. *O'Brien*, 325 Mass. 573, 578 (1950). See also *Schuler* v. *Schuler*, 382 Mass. 366, 372 (1981). At the time of the trial on the contempt complaints, the husband's present wife and their two children were in England visiting with her family. While it is unclear how this trip was financed, the husband indicated that it may have been paid from his present wife's savings. See *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980), and cases therein cited. On these facts, we would be hard put to conclude that the trial judge was in error in finding that the husband was in contempt of the two 1978 support orders.

*Judgment affirmed.*

*Robert F. Oberkoetter* (*Rosario M. F. Rizzo* with him) for Arthur B. Barreda.

*Katherine Liacos Izzo* for Eleanor M. Barreda.