LILLIAN F. KENNEDY *vs.* GEORGE D. KENNEDY
(and three companion cases).

Hampden.   April 11, 1985. — August 12, 1985.

Present: BROWN, KAPLAN, & FINE, JJ.

*Husband and Wife,* Separate support. *Contempt. Interest. Judgment,* Interest. *Divorce and Separation,* Attorney's fees.

Where a contempt judgment of a Probate Court established that a husband was in arrears in payments of wife and child support in the amount of $47,930, a provision in the judgment that the husband was to liquidate the arrearage, after a lump sum payment of $5,000, at the rate of $400 a month was manifestly unfair, and, on remand, the judgment was to be modified to fix a rate at "the maximum of his reasonable capacity to pay." [561-562]

Where a contempt judgment against a husband for arrearages in support payments to his wife and children had been entered before the effective date of provisions of G. L. c. 215, § 34A, fifth par., that such a judgment shall include interest from the date of filing the complaint, interest was to be charged only on those additional arrearages made payable after the statute took effect. [562]

Where a contempt judgment provided that a husband found to be substantially in arrears in payments of wife and child support was to pay off the arrears at a fixed monthly rate, it was for the judge, in his discretion, to determine whether interest was to be charged on the unpaid balance of arrears. [563]

This court, considering the record of a husband's failure to comply with support orders, directed that his military pension be attached. [563]

The adequacy of the fees awarded to three attorneys for their representation of a wife during a protracted course of domestic litigation, against unremitting and rancorous opposition, was to be reconsidered by the trial judge, and a fresh award was to be made by him upon findings. [563] BROWN, J., concurring.

PETITION filed in the Probate Court for the county of Hampden on June 8, 1972.

COMPLAINTS for divorce filed in the Hampden Division of the Probate and Family Court Department on July 10, 1980, and December 2, 1981, respectively.

After review by this court, reported in 10 Mass. App. Ct. 113 (1980), and 17 Mass. App. Ct. 308 (1983), further proceedings were heard by *Joseph E. Rodgers, J.*

*William C. Newman* (*Wendy Sibbison* with him) for the plaintiff.

*James M. Walsh* for the defendant.

*Jon B. Laramore & Allan G. Rodgers,* for The Women's Alliance & others, amici curiae, submitted a brief.

KÁPLAN, J. This is the third appearance in this court of a litigation that has been on the books for some thirteen years.

On September 25, 1972, a decree entered in the Probate Court upon the husband George's default, awarding the wife Lillian monthly support of $250 for herself and $600 for the five children of the marriage. George at the same time was professing the validity of an Arizona decree in lesser amounts that he had obtained on Lillian's default. The conflict came to a head when Lillian sought to attach George's military pay as security for her decree, and in *Kennedy* v. *Kennedy,* 10 Mass. App. Ct. 113 (1980) (*Kennedy I*), this court denounced the Arizona decree as void for lack of jurisdiction and upheld the domestic one.

On July 10, 1980, just after our decision of *Kennedy I,* Lillian filed a complaint in contempt for George's failure to make payments under the 1972 decree;[1] and a probate judge, after hearings, by judgment of April 26, 1982, held George to be in contempt. However, on grounds of the excessiveness, as the judge thought, of the 1972 award, he reduced arrearages of $57,050, accumulated from 1972 through 1981, to $27,050, of which George was ordered to pay $5,000 at once, and the balance at the rate of $400 per month. The judge also dismissed Lillian's petition for attachment and denied her application for attorneys' fees and expenses.[2]

The parties cross appealed. In *Kennedy* v. *Kennedy,* 17 Mass. App. Ct. 308 (1983) (*Kennedy II*), we reviewed the

[1] She had previously filed such a complaint. This was on January 14, 1977, before the validation by this court of the 1972 decree.

[2] The parties were each granted a divorce for cruel and abusive treatment. George's complaint for modification was denied. We pass over some details.

ruling on arrearages and directed the probate judge to reconsider the matter, and we declared that the judge might also reconsider the question of counsel fees.

Upon this second remand, the probate judge entered a judgment on April 30, 1984, which is the subject of our present review. The judgment established the amount of the arrearages at $47,930, a reduction of $9,120 from $57,050. This resulted from cutting off roughly a year (1981) of Lillian's support, that is, $3,000, and adjusting amounts payable for children's support (three of the children had become emancipated since 1972). George was to liquidate the balance of the arrearages — after the lump sum payment of $5,000 — at the rate of $400 per month. He was charged with Lillian's attorneys' fees and expenses in an amount of $7,500 (of which $5,300 presumably represented fees).[3]

We take the effect of the notices of appeal to be that the parties mutually attack the judgment, and attack respectively the ancillary orders denying their motions for relief from judgment and to alter and amend the judgment. After entry of the judgment, Lillian applied for but was denied an attachment of George's military pension. Her appeal from the order has been consolidated with the main appeals.[4]

The correctness of the judgment appealed from is to be judged in the light of *Kennedy II* and any consistent considerations of equity.

As observed in *Kennedy II*, at 313, the burden was on George to demonstrate that circumstances had changed materially since 1972 so as to justify a reduction of the arrears. We think the judge was in error in eliminating Lillian's support for the one year. It should be restored. It was suggested in our opinion that downward modification of arrears might be justified because of the emancipation in the interim of several of the children, against which should be considered George's rising income and

---

[3] Other details are omitted.

[4] During the pendency of the appeals, Lillian applied to a single justice of this court for an attachment of the pension and George appeals from the order allowing it. The order is affirmed, in line with our disposition of the appeal consolidated with the main appeals (see *infra*).

the effect of inflation on Lillian. Although with misgivings, we are not prepared to disturb the judge's handling of that question.[5] As to the $400 monthly rate of payment adjudged to make good the arrears, we think this is manifestly unfair to Lillian when one considers George's past defaults, his limited obligations for children's current and future support, and his apparent prosperity. The rate should be set at the maximum of his reasonable capacity to pay, his total situation being considered; and there are indications on the record that this may not be less — though it may be more — than $1,045 per month after children's support obligations cease. The judgement should make such provision for the payment of the entire sum outstanding that liquidation may be completed within a sensibly finite period of time.

Under G. L. c. 215, § 34A, fifth par., inserted by St. 1982, c. 282, effective October 6, 1982, a contempt judgment shall include interest from the date of filing the complaint.[6] This legislation was a new departure. The circumstances of the present case add a problem, because § 34A, fifth par., became effective after a contempt judgment had already entered for $27,050 of arrears. To respond to considerations of retroactivity, and in fairness, we think that interest should be charged only on the additional arrears made payable by the judgment of April 30, 1984 ($47,930 less $27,050, interest from July 10, 1980, to April 30, 1984), and the further additional arrears eventuating from the present appeals ($3,000, interest from July 10, 1980, to the date of entry of judgment on remand).[7]

---

[5] As to interest on the arrears, see *infra*.

[6] "Any monetary contempt judgment shall carry with it interest, from the date of filing the complaint, at the rate determined under the provisions of section six C of chapter two hundred and thirty-one of the General Laws."

[7] We recognize that the amounts of interest reached on the bases described may be subject to deductions for payments actually made at various times, and to adjustments for other reasons. Approximations may have to be made and settled on a reasonable basis.

An alternative basis for solving the interest question might be to charge the interest on the full principal amount to appear in the judgment as entered on remand, but limited to the period from October 6, 1982 (effective date of the statute), to the date of the entry of that judgment. Cf. *Porter* v.

The rate, in both instances, will be at the prejudgment rate of twelve percent, as fixed by G. L. c. 231, § 6C, as amended by St. 1982, c. 183, § 3, effective July 1, 1982.[8]

We do not agree with the suggestion that as George pays each liquidating installment of, say, $1,045, he should be charged with interest on the unpaid balance of arrears. This was a matter for decision by the judge in discretion, it was not a matter of prescription. On the other hand, if George should default in payment of any instalment, he will be chargeable with interest thereon.

Having in mind the less than glittering record of George's past performance, as well as the fact of his present residence in Europe, we reverse the order of the probate judge denying attachment of his military pension. We direct the judge to act under 42 U.S.C. § 659 (1976) with a view to effectuating such an attachment as security for George's obligations of payment, the attachment to remain in force until dissolved for good cause after notice and hearing.

Counsel for Lillian submitted a bill for $31,897 for 588 hours of work by three lawyers over a period of five years. As noted, the probate judge allowed $5,300. Even if one assumes that some part of counsel's efforts may have been superfluous or duplicative, and that such part as was not, may to some extent have been routine rather than novel, still, on a superficial view, the amount allowed seems inadequate. Not to be ignored is the unremitting opposition that Lillian's counsel had to face. The matter should be reconsidered and a fresh award made upon findings.[9] The judge should also consider

---

*Clerk of the Superior Court*, 368 Mass. 116 (1975). We reject this alternative, however, because it would not give effect to the statutory statement that interest is to run from "the date of filing the complaint."

[8] The 1982 amendment of § 6C, establishing the twelve percent rate, applies by its terms to "all actions in which damages are assessed on or after the effective date of this act." St. 1982, c. 183, § 4. See *Tosti* v. *Ayik*, 394 Mass. 482, 499-500 (1985); *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 273 (1985); *Frank D. Wayne Associates* v. *Lussier*, 394 Mass. 619, 622 n.2 (1985).

[9] In *Kennedy II* we said, at 315 n.12, that the question of counsel fees might be considered by reference to the policy favorable to such allowances

what award should be made for services in connection with the instant appeals.

With regret, we add a comment. While Lillian's briefs display some rancor, it is exceeded by the adjectival invective of George's briefs. Such advocacy does not help the client. It protracts and embitters litigation to the injury of the legal system.

The judgment appealed from will be modified by setting the amount of the arrearages as $50,930 (with interest as indicated), and by vacating the provisions (a) establishing a monthly rate of payment of the arrearages, and (b) awarding counsel fees and expenses. The probate judge will reconsider these provisions taking such further evidence as may be necessary or advisable. (The appeals from the orders denying motions for relief from judgment and to alter or amend the judgment need not be acted on.) The order of the single justice allowing an attachment is affirmed, and a continuing attachment will be ordered, as indicated. Rescript will go down forthwith. The probate judge will act thereunder with all feasible speed.

*So ordered.*

BROWN J. (concurring). I concur fully with the reasoning and result of this court's decision. I enthusiastically endorse its stern admonition of the deplorable advocacy on the part of George's attorney.[1] There must be limits on what a lawyer will do for a client. Lawyers are not hired guns. Our profession is a higher calling, and we should be about loftier business. To paraphrase an all to often repeated refrain: members of the bar are ill-advised to consider that any departure from the norm

---

expressed in G. L. c. 215, § 34A, fourth par., inserted by St. 1982, c. 282, effective October 6, 1982.

[1] The vituperative tone of George's briefs is made the more objectionable because it is employed in aid of some transparent attempts to make the worse appear the better reason.

Kennedy *v.* Kennedy.

which is not so grievous as to call for judicial or bar oversight "sets a new and less elevated standard for lawyers' behavior." Cf. *Commonwealth* v. *Johnson*, 372 Mass. 185, 197-198 (1977).

The duty to represent a client zealously (see S.J.C. Rule 3:07, DR 7-101[A], as appearing in 382 Mass. 784 [1981]) is not unqualified. See S.J.C. Rule 3:07, DR 7-101(B) and DR 7-102(A), as appearing in 382 Mass. 784, 785 (1981). Lawyers have an obligation to the public and the profession to decline engagement for obviously dilatory tactics. At least some of George's positions on this most recent round of litigation have this character. There have been thirteen years of maneuver by George to avoid his obligations. It is a reproach to the system of justice.