## LYNNE C. ALLEN vs. MERRILL R. ALLEN.

No. 86-202.

Norfolk. May 11, 1987. — March 24, 1988.

Present: GREANEY, C.J., CUTTER, & ARMSTRONG, JJ.

*Divorce and Separation,* Alimony, Findings, Judgment, Modification of judgment, Agreement respecting life insurance, Attorney's fees. *Contempt. Interest.*

At a hearing on a complaint for contempt for failure to make support payments after a divorce, the judge properly attributed as income to the divorced husband the gross sales of a one-employee corporation that was found to be the husband's "alter ego", where no evidence was introduced that the gross sales were not an accurate measure of the husband's gross income. [519-520]

Where a probate court order modifying the definition of income on which a divorced husband's support obligation was to be based was not by its terms retroactive, the husband was not entitled to the reopening of calculations of his income made in previous contempt actions against him which had already gone to judgment. [520]

Amounts of money drawn against prospective but unearned commissions were to be treated as income of a divorced husband for purposes of calculating his support obligations to his former wife, where he did not establish that he was still obligated to repay the overdrafts. [520-521]

There was no error in a probate judge's overruling objections to a master's report where the master's general findings on the contempt and support matters referred to him were not inconsistent with or unsupported by his subsidiary findings, in circumstances where review of the findings under Mass.R.Dom.Rel.P. 53(h) was precluded because the master had appointed no stenographer to record the evidence. [521-522]

No error appeared in a judge's denying a motion for further recommittal of a master's report. [522-523]

Interest is to be computed on a judgment of contempt for nonsupport from the date of the applicable complaint to the date of judgment after rescript (or the date of payment, if earlier) on sums due at the time of the filing of the complaint, and, for sums due after the filing of the complaint, interest is to be computed from the date when payment should have been made. [523-524]

The plaintiff in a contempt action to enforce a support judgment was entitled to all the reasonable attorney's fees incurred in efforts to enforce com-

pliance, and the inadequate fees which had been awarded were to be re-determined. [524-525]

COMPLAINT for divorce filed in the Probate Court for the county of Norfolk on July 6, 1976.

Proceedings for modification commenced on June 19, 1979, and September 9, 1979, respectively, and for contempt commenced on June 20, 1979, and August 30, 1979, respectively, were heard by *B. Joseph Fitzsimmons, Jr., J.*, on a master's report.

An additional proceeding for contempt, commenced on July 24, 1984, was heard by *Edmund V. Keville, J.*

*Arthur Goldstein* for Lynne C. Allen.

*Jeffrey N. Moxon* for Merrill R. Allen.

ARMSTRONG, J. The parties were divorced in January, 1977. The judgment nisi made provision for alimony, support, and property division by incorporating an agreement executed by the parties the previous month. Notwithstanding the survival of the agreement as an independent contract, the agreement made provision for judicial modification of alimony and support necessitated by any major change of circumstances not the voluntary act of the parties. In February, 1978, Merrill was found to be in arrears on his 1977 payments. On March 12, 1979, along with a contempt judgment determining that Merrill was in arrears on his 1978 payments, a judge modified the alimony and support provision. For the calendar year 1979 and thereafter, Merrill was left with an obligation to pay Lynne thirty-six percent of his "gross earnings", which term was defined as "earnings from any source before business deductions or expenses." The support obligation was subject to a reduction factor not here material and to a $20,000 cap.

At the time of the modification Merrill was employed (as he had been in 1978) as a salesman for an X-ray supply company. He earned no salary as such but drew periodically against commissions. His draws in 1978 were found to be $7,600, approximately, in excess of the commissions that were due him. In computing the 1978 arrearages the judge did not treat

that sum as part of Merrill's income under the analogous for-
mula for computing alimony before the 1979 modification.
Neither party appealed from the contempt and modification
judgments entered in March, 1979.

In June, 1979, Lynne filed (1) a contempt complaint, alleging
failures by Merrill to comply with the alimony provisions of
the judgment as modified in March and with certain medical
payments provisions of the original judgment; (2) a complaint
for modification; and (3) an equity complaint alleging that
Merrill had made a fraudulent transfer to his new wife of his
interest in their jointly owned condominium. In August, 1979,
Lynne filed another complaint for contempt based on more
recent failures to comply with the judgment. In April, 1980,
Lynne filed a motion to amend the contempt complaint of
June, 1979, to consolidate its allegations, those of the August,
1979 complaint, and allegations of later instances of non-
compliance in a single contempt complaint. In February, 1981,
a different judge (hereafter "second judge") referred to a master
all of the pending complaints and the motion to amend.

The master filed his report in June, 1982. Regarding alimony
and support he made findings as follows. At the end of July,
1979, Merrill had left the employ of the X-ray supply company,
by which time he had made draws in excess of commissions
amounting to $8,510.15. From August 1 through December,
1979, Merrill had worked as an independent commission sales-
man for Adco Surgical Supply, where as before he had no
salary but took a monthly draw against commissions. The
draws amounted to $9,927.32 in excess of commissions. In
computing Merrill's support obligation for 1979, the master
did not attribute these overdrafts to Merrill as earnings. Begin-
ning in January, 1980, Merrill was employed by Exodus Maine,
Inc., again selling medical supplies, for an annual salary of
$12,000. The master attributed that amount to Merrill as earn-
ings for 1980, declining to treat as income to him numerous
personal expenses paid for Merrill by Exodus (rent, car, meals,
etc.). For 1981, the last year considered by the master in the
original report, the master added to Merrill's acknowledged
salary $2,000 paid by Exodus to Merrill's wife as rental for

Merrill's office space in their marital home, a house purchased in Maine by Merrill's wife in April, 1981.

By orders on two separate dates the second judge ordered partial recommittal to the master, originally for the purpose of determining Merrill's 1982 income (the pending complaints, although filed before 1982, sought "such further amounts as may accrue to the date of hearing") and, later, for the purpose of reexamining Merrill's 1980 and 1981 income in light of evidence newly adduced by Lynne. For whatever reason (none is disclosed in the record) the master's report on recommittal was confined to the determination of Merrill's 1982 income. The master found it to be as stated in the records of Exodus ($4,325), and arrearages for 1982 were computed by applying thirty-six percent to that figure. (Merrill had made no payments in 1982.)

The proceedings before the master relative to 1979, 1980, 1981, and 1982 arrearages were still pending when, in July, 1984, Lynne filed another (amended) complaint for contempt alleging Merrill to be in arrears on his support obligation for 1983. This complaint was not referred to a master but was heard on the merits in August, 1984, by another probate judge (hereafter, third judge). Based on the evidence before him, the third judge found that Exodus Maine Corp. was a one-employee business which (despite the fact that Merrill's mother was the president and sole shareholder) was, in effect, the alter ego of Merrill. He attributed as income to Merrill the entire gross sales of Exodus, which, on Merrill's testimony, he found to be between $75,000 and $80,000 for the corporate fiscal year October 1, 1982, to September 30, 1983, and not less than $100,000 for the corporate year beginning October 1, 1983 (the corporate fiscal year had not yet expired at the time of trial). The third judge determined arrearages for 1983 to be $20,000 (the cap amount under the agreement) and ordered Merrill to pay counsel fees and expenses of $1,200. Merrill filed a notice of appeal from this judgment.

Thereafter the master's report on recommittal (previously mentioned) relative to Merrill's 1982 income was filed and came on for hearing before the second judge on Lynne's objec-

tions and on Merrill's motion for adoption of the master's original and supplemental reports. The latter was allowed, and Lynne appealed from the ensuing judgments entered on the several complaints for contempt and modification.

### MERRILL'S APPEALS

Merrill correctly does not contest that the evidence (which is before us) heard by the third judge warranted his finding that Exodus was Merrill's alter ego. His sole contention is that the third judge was not justified in attributing the gross sales of Exodus as income to Merrill. The gross sales of Exodus, Merrill suggests, may bear little relation to its gross income. When acting as a dealer, Exodus should be entitled to deduct the cost of goods sold to arrive at an income figure meaningful for purposes of ascertaining Merrill's alimony obligation; and when it is acting as a manufacturer's representative, its income should be measured not by its gross sales but by the commissions it received on those sales. As to commission income and cost of goods sold, Merrill argues, the evidence was silent.

On the evidence before him, we think that the third judge was justified in concluding that Exodus was a dodge created for the purpose of enabling Merrill to avoid his support (and perhaps also his income tax) obligations. He could properly have regarded Merrill as an evasive witness and drawn inferences adverse to him from the uncertainties surrounding Exodus's finances. Compare *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 813, 822 (1985). Merrill was obviously in a superior position to put in evidence the business records of Exodus for the period at issue [1] so as to explain the significance of the "gross sales" figures rather than rely exclusively on a

---

[1] Not before the third judge at trial, but part of the record before us on the years that were the subject of the master's report, is Exodus's fiscal year tax return for the period October 1, 1980, to September 30, 1981, the period during which Merrill underwent coronary bypass surgery and was disabled from working for several months. Its gross profit that year ($35,907) was reported to be the same as its "gross receipts or sales," no deduction having been made for "cost of goods sold". Although the corporation's taxable income was reported as a negative figure, the deductions from gross (taxes excepted) seem largely consistent with the notion that its expenses are primarily salaries paid to Merrill and his wife and their living expenses.

claim that Lynne had not carried her burden of proof. Even after the judge's findings were announced, Merrill could have filed a motion for amendment of findings based on a showing through records that the gross sales of Exodus were a misleading measure of Merrill's gross income. There is no reason to think the judge would ignore such a showing if indeed a mistake had been made.[2]

After entry on December 12, 1984, of orders (entered on Lynne's and Merrill's complaints for modification) modifying the definition of income on which Merrill's support obligation was to be predicated,[3] Merrill filed a motion for relief from judgment. The sole basis was that the judge had determined arrearages for 1983 using a now displaced standard for calculating his income. Nothing in the modification judgments, however, indicates that they were to have retroactive effect, requiring the reopening of income calculations in connection with contempt actions previously gone to judgment. The motion, moreover, contains no indication that Merrill's income under the new definition would be substantially different (if at all) from his income under the old. There was no error in denying the motion.

### LYNNE'S APPEALS

Citing *Perma-Home Corp.* v. *Nigro,* 346 Mass. 349 (1963), and *Pesanelli* v. *Lombardi,* 349 Mass. 250 (1965), Lynne argues that the unrepaid overdrafts against commissions should have been treated by the master and the second judge as income to Merrill for the year 1979. The master explained in his report that he did not treat overdrafts as income because the first

[2] For similar reasons we reject Merrill's contention under *Sodones* v. *Sodones,* 366 Mass. 121, 130 (1974), that Lynne failed to prove that he had the ability to comply with an order to pay arrearages in the amount determined. As to the burden of proof, see G. L. c. 215, § 34, as amended by St. 1982, c. 328. Compare also *Grubert* v. *Grubert,* 20 Mass. App. Ct. at 822.

[3] The judgment of modification dated March 12, 1979, had described Merrill's relevant income figure to be "earnings from any source before business deductions or expenses." The December 12, 1984, modification defined his income as "salary or wages received by Merrill Allen, other monies received by him as compensation, monies received by him as interest or dividends."

judge (who entered the March 12, 1979, judgment) did not do so in computing Merrill's 1978 income. The 1978 overdrafts were drawn against the X-ray supply company for which Merrill still worked at the time of the March 12, 1979, judgment. At that time Merrill was obligated to repay the overdrafts in the sense that they could be withheld from commissions to be earned. When he severed his connection with the X-ray company later in 1979, he was no longer obligated to repay the overdrafts in the absence of an express or implied agreement to repay from sources other than future commissions. The burden of proving such an agreement lies with the party seeking to establish the existence of the debt. See *Perma-House Corp.,* 346 Mass. at 352 (treatment of the third request for ruling) and 354 (treatment of the plaintiff's first request); *Pesanelli,* 349 Mass. at 252. The same reasoning applies to the draws Merrill made in excess of commissions from Adco Surgical Supply, with which, on the master's findings, Merrill severed ties at the end of 1979. Merrill's arrearages for the year 1979 must be increased by a sum representing thirty-six percent of the total of the overdrafts.[4]

The master made express findings as to his reasons for rejecting Lynne's contention that he should look through the corporate form and treat as income to Merrill substantial sums in excess of his stated salary from Exodus. Some of these reasons applied with dwindling force as Merrill's wife relocated to Maine, the marital home became the Exodus office, and Merrill's wife went on the Exodus payroll.[5] Others were grounded squarely, however, in deficiencies in Lynne's proof. The master stated that "[n]o evidence was introduced with respect to the financial status of Exodus . . . , its capitalization, or its current profit and loss status. There is no evidence that Merrill has received compensation in excess of his monthly salary, nor that the corporation has accumulated profits for Merrill's

---

[4] I.e., .36 x ($8,510.15 + $9,927.32), or $6,637.49.

[5] Prior to April, 1981, for example, Merrill's living expenses in Maine could reasonably be thought of as travel expenses incurred purely for the convenience of Exodus, Merrill maintaining at that time a separate home for his wife and child in Massachusetts.

benefit or in fact that the corporation has shown any profit whatsoever." Other deficiencies in the evidence were noted in the master's supplemental report relative to Merrill's 1982 income: an example was the absence of evidence concerning Exodus's income in its fiscal year 1982.

Lynne filed numerous objections to the findings and conclusions in the supplemental report that underlay the master's refusal to conclude that Exodus was a sham corporation. Her basic contention was that the findings were erroneous and that other findings should have been made. As these objections could only be resolved by examining the evidence on which the master based his findings, Lynne's objections for the most part took the form of requests that the master be ordered to furnish summaries of the evidence for examination by the court. These she was not entitled to as of right because the evidence before the master had not been taken by a stenographer appointed by the master. *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 282-283 n.3 (1976). *Miller* v. *Winshall*, 9 Mass. App. Ct. 312, 314 (1980). This also precluded review of the findings under the more modern practice represented by Mass.R.Dom. Rel.P. 53(h). See, in particular, sub-par (3), as amended in 1982. The master's general findings were not inconsistent with or unsupported by his subsidiary findings. The fact that the third judge, looking at Merrill's 1983 income, had by this time reached the conclusion that Exodus was indeed a sham does not require that the same conclusion be drawn by a different fact finder on different evidence relating to different periods of time. There was no error in overruling the objections.

On the computation of Merrill's income, it remains only to mention a motion for recommittal to the master which was filed by Lynne after the master had filed his supplemental report in late 1984. The basis for the motion was that the master had responded in that report to only one of the two earlier recommittal orders. He had ascertained Merrill's 1982 income but had not reexamined his findings relative to 1980 and 1981 income. That reexamination had been sought to enable Lynne to adduce the evidence concerning the financial structure of Exodus, this in response to the master's recital in

his original report of evidentiary deficiencies along those lines. The judge (i.e., the second judge) might have ordered a further recommittal. A motion to recommit is addressed to the discretion of the court. *Minot* v. *Minot*, 319 Mass. 253, 258 (1946). *Peters* v. *Wallach*, 366 Mass. 622, 626-627 (1975). The judge wisely declined to recommit. The master's treatment of 1982 income suggested little chance that he would reach a different conclusion as to 1980 and 1981, and the judge correctly deplored the innumerable proceedings and the resultant delay that had attended the litigation, ongoing by then for almost six years. Plainly, the game was no longer worth the candle.[6]

The master also found that Merrill had violated his life insurance obligation under the separation agreement by removing the three children of his first marriage as beneficiaries of a $15,000 life insurance policy, designating in their place his second wife and his children by her. The obligation was to expire as to each child at emancipation. Two children are now emancipated. The third, in the normal course, will be emancipated (as the agreement defines that term) by his graduation from college this spring. Recognizing, apparently, that specific enforcement of the obligation is now of little value, Lynne seeks in her brief an alternate, or compensatory, order, perhaps requiring Merrill to insure his life for the benefit of the children while their college loans remain unpaid. The record does not indicate that this request was made in the Probate Court.[7] We decline to consider it here for the first time. *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 93 (1984), and cases cited.

Merrill concedes that, under G. L. c. 215, § 34A, fifth par., inserted by St. 1982, c. 282, and the holding in *Kennedy* v. *Kennedy*, 20 Mass. App., Ct. 559, 562-563 nn.7 & 8 (1985), the judgment must be amended to include interest on arrearages.

---

[6] The master had found Merrill $9,476.40 in arrears over a four-year period. Lynne had on file motions for counsel fees (based on 801.38 hours of work) and expenses amounting to $104,939.65.

[7] Lynne may have raised the issue of a compensatory award in a motion to vacate judgment under Mass.R.Dom.Rel.P. 60(b) (1975), but consideration at that stage would be discretionary with the judge. *Parrell* v. *Keenan*, 389 Mass. 809, 814-816 (1983).

He asks only that interest not be computed back to the date of the respective complaints in the instances where the arrearages determined by the judgment did not become due until after the applicable complaint was filed. An adjustment of this kind does not offend the statute, which is reasonably read as contemplating arrearages already due at the commencement of the action. Thus, interest is to be computed from the date of the applicable complaint to the date of judgment after rescript (or the date of payment, if earlier) on sums due at the filing of the complaint, and from the date when payment should have been made as to sums which came due thereafter. Although the final amount due for a particular year could not be ascertained with certainty until the year had closed, payments were due on a bimonthly basis. The sum found to be in arrears for any given year should not be treated as having come due at year's end. Absent agreement by the parties, the judge may adopt a simplified method of approximating installments, as, for example, by interest averaging.[8] Interest should also be computed on the $300 sanction award imposed against Merrill from the date when it was imposed conditionally.

We have no question that the allowance given Lynne for counsel fees ($700 and $175 costs) was inadequate and an abuse of discretion. Doubtless the time spent was excessive. Merrill's pattern, however, of consistently ignoring his obligations under the separation agreement and the judgment nisi over the four-year period encompassed by the judgment necessarily required substantial expenditures of time by counsel unless the defaults were to be ignored. Determining the quality of the work product and the hours reasonably required in the case necessarily requires an exercise of judgment by the judge; but, subject to that determination, the governing principle in contempt cases is that the plaintiff is entitled to "*all* of the reasonable attorney's fees she incurred in her efforts to enforce compliance with the support orders." *Kennedy* v. *Kennedy,* 23 Mass. App. Ct. 176, 181 (1986), aff'd, 400 Mass. 272

---

[8] E.g., treating the arrearages for a particular year as having been due January 1, computing the interest due thereon up to December 31, then halving that figure.

(1987). For most of the defaults found by the master there was no colorable excuse; consequently, there is no reason for Merrill to be excused from compensating Lynne for reasonable counsel fees necessarily spent in securing compliance. It is not useful to discuss this point further. Doubtless the second judge was influenced in part by the modest total of the arrearages Lynne had in his view succeeded in establishing. That figure will be substantially larger as a result of this appeal. For both reasons the award of attorney's fees and costs must be vacated and the matter redetermined.

No purpose would be served by discussing the other points argued. They have been considered, and no change is called for.

The contempt judgment entered August 31, 1984, and the order denying the motion for relief from that judgment are affirmed. The modification judgments entered December 12, 1984, are affirmed. The contempt judgments entered the same day are to be modified as follows: (1) arrearages are to be computed to include those based on draws in excess of commissions (see note 4, *supra*); (2) interest is to be computed and added to the award of arrearages in accordance with the principles stated in this opinion; (3) the allowance for Lynne's attorney's fees and costs is to be redetermined in accordance with the guidelines stated herein. As so modified, the contempt judgments are affirmed. Lynne is to have an award of counsel fees in the amount of $1,500 on account of this appeal, plus costs.

*So ordered.*