PATRICIA PORAS *vs.* BERT R. PAULING.

No. 06-P-1534.

Middlesex. May 17, 2007. - October 19, 2007.

Present: DUFFLY, ARMSTRONG, & KAFKER, JJ.

*Contempt. Interest. Judgment,* Interest. *Divorce and Separation,* Child support. *Parent and Child,* Child support.

A probate judge did not err as a matter of law in determining, on a motion for clarification filed in 2006, that a 1994 judgment was not a judgment of contempt, cognizable under the provisions of G. L. c. 215, § 34A, and carrying interest at the rate set by that statute, where the judgment, although labeled as a contempt judgment, merely was issued in response to a complaint for contempt arising from a husband's failure to pay support and contained no express finding of contempt; where the judgment contained an explicit finding that the husband was presently unable to pay the arrears; where the judgment contained no provision for attorney's fees and expenses, sums that the prevailing party presumptively would have been entitled to receive upon a finding of contempt; and where the judge hearing the motion for clarification was the same judge who issued the contempt judgment and, therefore, was in a unique position to clarify what she had meant. [539-544] This court declined to address an issue that was inadequately developed on appeal. [544-546]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on December 4, 1981.

A complaint for contempt was heard by *Beverly Weinger Boorstein,* J., and motions to revise the payment order and for clarification of the order were heard by her.

*Robert E. McLaughlin, Jr.* (*John G. Hofmann* with him) for the plaintiff.

*Bert R. Pauling,* pro se.

KAFKER, J. In 1994, Bert R. Pauling was over $50,000 in arrears in his support obligations to his former wife Patricia Poras. The amount of arrearages and the repayment plan were established in a judgment issued in response to a complaint for contempt.

By 2005, Pauling had repaid the arrears. Poras claimed, however, that he still owed her over $93,000 in interest.

At issue is whether the 1994 judgment was a contempt judgment pursuant to G. L. c. 215, § 34A, that carried with it twelve percent interest,[1] or whether interest is otherwise provided by law on the 1994 judgment. In 2006, in response to a motion for clarification, the judge who issued the 1994 ruling concluded that despite her labeling the document a "contempt judgment," she had not held Pauling in contempt in 1994 and therefore no interest was required. We affirm.

1. *Background.* This case has a long and tortuous history that we are constrained to recite in some detail. The parties were divorced by a judgment of divorce nisi in November, 1982. By the terms of the judgment (which is not included in the record appendix), the wife apparently was awarded custody of the parties' two minor children, and the husband was ordered to pay child support in the amount of $300 per week. On January 21, 1988, the wife filed a complaint for contempt. By a "Contempt Judgment" dated August 22, 1988, the parties agreed that the husband was in arrears in his support payments in the amount of $8,000. The husband was ordered to pay the wife $328.14 per week as child support, plus $110 per week toward the arrears; an additional payment of $2,000 was also to be applied toward the arrears. The matter was continued to November, 1988. By another "Contempt Judgment" dated November 30, 1988, a probate judge established the husband's total arrears at $15,905, noting that the husband had the ability to comply with the judgment of August 22, 1988, but had wilfully failed to do so.

On December 11, 1989, another "Contempt Judgment" was issued fixing the husband's support arrears at $24,324.56 (said sum including the arrearage of $15,905 established by the judgment of November 30, 1988). The judge found that the husband "has the ability to pay the weekly child support order . . . of

---

[1]General Laws c. 215, § 34A, fifth par., inserted by St. 1982, c. 282, provides: "Any monetary contempt judgment shall carry with it interest, from the date of filing the complaint, at the rate determined under the provisions of section six C of chapter two hundred and thirty-one of the General Laws." General Laws c. 231, § 6C, provides for prejudgment interest at the rate of twelve percent per annum.

$328.14 of August 22, 1988[,] . . . plus a payment toward arrears of $46.86 per week." The husband also received a thirty-day suspended jail sentence.

The parties were again in court in 1994 on a complaint for modification filed by the husband[2] and a complaint for contempt filed by the wife. By a modification judgment dated September 28, 1994, the order for child support was modified to provide that the husband was to pay to the wife, effective as of February 15, 1994, through September 8, 1994, the weekly sum of $210. From and after September 8, 1994, the husband, on income imputed to him at $1,000 per week, was to pay to the wife (whose income was imputed to be $25,000 per year) the weekly sum of $290 as child support. By a "Contempt Judgment" of the same date, the judge established the husband's total arrears at $50,599.56.[3] The judge also stated that the husband was "presently unable to pay the arrears." The judge ordered that the husband pay the wife $200 per month toward the arrearages. The judgment provided further that in the event the husband failed to pay the monthly amounts due, or if the husband's financial circumstances changed at any time, either party could mark the contempt for review upon fourteen days' notice to the other and the court.

Nine years later, on September 8, 2003, the wife filed a motion to revise the payment order contained in the 1994 contempt judgment, alleging that there had been a significant improvement in the husband's financial circumstances occasioned by the graduation of the parties' youngest child from college.[4] By an order dated December 30, 2003, the same judge who issued

---

[2]The docket entries indicate, and the husband confirms in his brief, that the complaint for modification (which is not included in the record appendix) was filed on January 9, 1989. It is not clear from the record before us why the hearing on the complaint was delayed for over five years.

[3]The total arrearage figure includes the $24,324.56 established by the contempt judgment dated December 11, 1989, additional arrears through February 15, 1994, in the amount of $8,675, arrears due from February 15, 1994, through September 8, 1994, in the amount of $2,100, and arrears due as a result of unpaid uninsured medical and dental expenses in the amount of $15,500.

[4]The motion to revise payment also makes reference to a July, 2002, judgment in which, the wife states, the judge found the husband in contempt and entered a judgment against him in the total amount of $42,552.29. The wife

the 1994 contempt judgment ordered the husband to pay the wife $4,000 on or before January 15, 2004, and, commencing on February 1, 2004, $800 per month toward the arrearage on the 1994 contempt judgment (said sum to replace the $200 per month payment toward arrearages contained in the 1994 judgment, but to be in addition to the $800 monthly payment contained in the July, 2002, judgment. See note 4, *supra*). The judge further ordered that when the husband had satisfied the July, 2002, judgment, the $800 monthly arrearage payment contained in the December, 2003, order was to be increased to $1,600 per month, which payment was to be applied toward the arrears on the 1994 contempt judgment, until paid in full. The order recites that "[a]ll payments made shall first be credited to principal."

On October 20, 2005, the wife filed a complaint for civil contempt alleging that the husband had violated the December, 2003, order by failing to pay $1,600 per month toward the arrearage on the 1994 contempt judgment which, the wife alleged, had a balance of $93,550.80. The $93,550.80 was interest which she asserted was also due to her. After a hearing,[5] a probate judge dismissed the complaint with prejudice, stating, "While this court found no willful violation of a clear and unequivocal order, neither party is precluded from seeking a clarification of the 12/30/03 order."

Thereafter, the wife filed a motion for clarification of the 2003 order in which she asserted (essentially) that the order should be clarified to acknowledge that she was owed interest under G. L. c. 215, § 34A, on the child support arrearages established in the 1994 judgment, and that the husband's payments were to be credited first to interest, then to principal. After another hearing, the same judge who heard the 1994 contempt action and the 2003 motion to revise payment entered a memorandum of decision and order in which she stated that not-

represents in the motion that the judge ordered the husband to pay her a lump sum amount of $20,000, attorney's fees in the amount of $7,500, and $800 per month until the contempt judgment was satisfied.

[5]The transcript of the hearing on the 2005 complaint for contempt is not included in the record appendix. The wife's representations at the subsequent hearing on her motion for clarification suggest, however, that a primary question before the judge in the 2005 proceedings was whether interest was owed on the 1994 contempt judgment.

withstanding the fact that the 1994 judgment was labeled a "contempt judgment," she did not then find the husband to be guilty of contempt (nor is such a finding contained in the 1994 judgment). Continuing, the judge stated that because the 1994 judgment was not an adjudication of contempt within the meaning of G. L. c. 215, § 34A, it did not "trigger the remedies" available under that statute, including the accrual of interest.[6] The judge further stated that the language of the 2003 order that "[a]ll payments made shall first be credited to principal" was included in the order by error. She then directed, pursuant to Mass.R.Dom. Rel.P. 60(a) (1975), that the language be stricken from the order and that a corrected order issue. The judge concluded that "[a]s both parties are in agreement that [the husband] has paid an amount equal to the original arrears amount [i.e., the $50,599.56 referenced in the September, 1994, judgment], no further arrears are due." The wife has appealed from the order and the corrected order, both dated June 13, 2006.[7]

2. *Discussion.* The wife primarily argues that the judge erred as a matter of law in determining that the 1994 judgment was not a judgment of contempt, cognizable under the provisions of G. L. c. 215, § 34A, and carrying interest at the rate set by that statute. See, e.g., *Kennedy* v. *Kennedy*, 20 Mass. App. Ct. 559, 562-563 (1985); *Allen* v. *Allen*, 25 Mass. App. Ct. 515, 523 (1988).[8]

"Civil contempt proceedings are 'remedial and coercive,' intended to achieve compliance with the court's orders for the benefit of the complainant." *Furtado* v. *Furtado*, 380 Mass. 137, 141 (1980), quoting from *Cherry* v. *Cherry*, 253 Mass. 172, 174 (1925). See *Mahoney* v. *Mahoney*, 65 Mass. App. Ct. 537, 540 (2006). "[I]n order to find a defendant in civil contempt

---

[6]The judge also stated that "[t]o assess interest against a Defendant who was not in fact guilty of contempt would be inequitable, and was not the intention of this Court."

[7]The corrected order dated June 13, 2006, specifies that it was "as of December 30, 2003."

[8]In view of the peculiar procedural history of this case, including the labeling of the 1994 judgment as a "contempt judgment," the recitation in the December, 2003, order that "[a]ll payments made shall first be credited to principal," and the invitation to the parties in December, 2005, to seek clarification of the December 30, 2003, order (and presumably how it may impact upon the question of interest), we cannot say, as the husband asserts, that the wife is now foreclosed from arguing that the 1994 judgment is a valid contempt judgment carrying interest under G. L. c. 215, § 34A.

there must be a clear and unequivocal command and an equally clear and undoubted disobedience." *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990). *Whelan* v. *Frisbee*, 29 Mass. App. Ct. 76, 82 (1990). *Stabile* v. *Stabile*, 55 Mass. App. Ct. 724, 726 (2002). "In addition, the defendant must be found to have the ability to pay at the time the contempt judgment enters." *Larson* v. *Larson*, *supra* at 340. *Aroesty* v. *Cohen*, 62 Mass. App. Ct. 215, 220 (2004) (present ability to pay is prerequisite to finding of civil contempt).[9] See Kindregan & Inker, Family Law & Practice §§ 72:3, 72:4 (3d ed. 2002) ("Upon a showing that a defendant in a civil contempt proceeding is in arrears on his adjudicated support obligations, the defendant must come forward with evidence of a present inability to comply with the order or judgment, and if no such proof of inability is forthcoming the defendant can be found in civil contempt"). A complaint for civil contempt is the "usual means for enforcement of a judgment or order for child support . . . ." *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 147 (2000).

The wife argues that the 1994 judgment was labeled a "Contempt Judgment." The label, however, may only signify that the judgment was issued in response to a complaint for contempt.[10] See *Shawmut Community Bank, N.A.* v. *Zagami*, 419 Mass. 220, 224 (1994); *Brissette* v. *Crantz*, 23 Mass. App. Ct. 213, 214 (1986). The judge also did not expressly find the husband in

---

[9] A civil contempt proceeding is to be distinguished from a criminal contempt proceeding, which is "exclusively punitive" in nature. *Aroesty* v. *Cohen*, 62 Mass. App. Ct. at 220, quoting from *Furtado* v. *Furtado*, 380 Mass. at 141. In a criminal contempt proceeding, a judge may make "a determination of contempt of court based on an ability to pay at the time of nonpayment, combined with a clear intention to disregard a valid court order." *Furtado* v. *Furtado*, 380 Mass. at 144. Additional procedural safeguards, however, must be observed in a criminal contempt proceeding.

[10] Although the judge did not use the standard form "Judgment of Contempt," at the time of the 1994 proceedings, Domestic Relations Form CJ-D 404 (1989) carried the heading "Judgment of Contempt" and contained boxes for indicating a finding that the defendant was either "guilty" or "not guilty" of contempt. Massachusetts Rules of Court, Appendix of Forms to Mass.R.Dom.Rel.P., Form CJ-D 404 (West 1995). Form CJ-D 404, as revised in October, 1996, and as appearing in the Appendix of Forms to Mass.R.Dom.Rel.P. in the 2007 Massachusetts Rules of Court (Thompson/West 2007), has the heading "Order — Judgment on Complaint for Civil/Criminal Contempt" and contains like boxes.

contempt. This express finding should be present if the defendant were held in contempt.

Additionally, the judge found that the husband was "presently unable to pay the arrears." As one of the requirements of civil contempt is a finding that the defendant is presently able to pay the arrears, this determination is dispositive. The wife argues, however, that the husband could be adjudged in civil contempt if he had the ability to pay his ongoing support obligations along with a structured arrears repayment plan, even if he was found not to have the "present ability to pay" the *entire* amount of the arrearage/judgment at the time the "contempt judgment" was entered. See G. L. c. 215, § 34, second par. ("When a judge of the probate court finds that a defendant is in civil contempt for failure to obey any order or judgment of the court relative to support of a spouse or child, the judge shall issue an order for the defendant to do one or more of the following: . . . [2] pay the full amount due under the order or judgment for support; [3] make regular payments of current support and an additional specified amount towards arrears, pursuant to a payment schedule ordered by the court that requires payment of not less than the amount required under section 12 of chapter 119A and that meets all other requirements of said section 12 . . .").[11],[12] See also *Barreda* v. *Barreda*, 16 Mass. App. Ct. 918, 921 (1983); *Kennedy* v. *Kennedy*, 20 Mass. App. Ct. at 561-562. Cf. *Sodones* v. *Sodones*, 366 Mass. 121, 130 (1974). She contends that when the 1994 contempt and modification judgments are considered in their entirety, the judge's statement that the defendant was "presently unable to pay" should only be interpreted to mean that he was presently unable to pay the entire amount of the arrears all at once.

In our view, the requirement of a present ability to pay set

---

[11]The second paragraph of G. L. c. 215, § 34, which was inserted by St. 1998, c. 64, § 284, was not in effect at the time of the 1994 proceedings.

[12]General Laws c. 119A, § 12, requires, among other things, that an amount equal to twenty-five percent of the support order be added to the amount withheld from the income of the obligor to pay arrears. This additional amount is subject to hardship exceptions. For a detailed discussion of G. L. c. 119A, including child support enforcement by the Department of Revenue, see 1 Budd & Zupcofska, Massachusetts Divorce Law Practice Manual c. 10 (Mass. Cont. Legal Educ. 2000; Supps. 2003 & 2005), reprinted in Ouellette, Child Custody and Support § 9 (Mass. Cont. Legal Educ. 2007).

out in the case law does not in all cases mean that a support obligor is able to write a check for the entire amount owed. See, e.g., *Barreda* v. *Barreda, supra*; *Kennedy* v. *Kennedy, supra.* Such an all-or-nothing interpretation of present ability to pay would reward gamesmanship on the part of already recalcitrant support obligors who might thereby be encouraged to spend down their limited assets. This interpretation of present ability to pay would further limit the relief available to those entitled to support. Instead, present ability may also mean the ability to continue to pay ongoing support obligations along with structured repayments that do not impose undue hardship on the support obligor (such as precluding a support obligor's ability to meet his or her own living expenses).[13] A judge is not, in all circumstances, required to hold in contempt an individual whom the judge orders to make payments over time to reduce accumulated arrearages.[14] The totality of the paying spouse's circumstances will have to be considered in making this determination, which involves the exercise of the probate judge's sound discretion.

That being said, the judge found that the husband here was only able to pay $46.51 per week towards the arrears. At the same time the judge lowered the support obligations prospec-

---

[13]We also note that in *Kennedy* v. *Kennedy*, 20 Mass. App. Ct. at 563, a decision where the support obligor was adjudged in contempt, Justice Kaplan, writing for the court, emphasized that it was not required that as the support obligor "pays each liquidating installment . . . he should be charged with interest on the unpaid balance of arrears. This was a matter for decision by the judge in discretion, it was not a matter of prescription. On the other hand, if [the support obligor] should default in payment of any instalment, he will be chargeable with interest thereon."

[14]For example, during a period of unemployment, arrears may accumulate although the support obligor may not seek downward modification in the belief that employment will soon resume. Once employment does resume, a disagreement about the amount of arrears, or the manner and amount of repayment, may trigger the filing of a complaint for contempt. Where an obligor has not filed a complaint for modification, a judge is no longer permitted to make a retroactive adjustment of the child support obligation, see G. L. c. 119A, § 13(*a*) (limiting retroactive modification to date notice is given of complaint for modification). The judge could establish the amount of arrears, find that the obligor does not have the present ability to pay, and order no payment toward arrears. A judge might also, in light of the totality of circumstances — including the parties' respective financial resources and needs of the children — establish the arrearage and impose a small weekly payment toward reducing the arrears even if that payment imposes some financial hardship on the obligor, in order to address the needs of the supported children.

tively, at least temporarily. If interest were applied to the entire amount owed (as the wife urges), the accrual of interest would have outpaced the amount the judge found the husband reasonably could pay. In these circumstances, the judge could properly determine that the defendant did not meet the present ability to pay requirement of civil contempt.

Further support for the judge's position may be gleaned from the fact that the 1994 judgment in the contempt action contains no provision for attorney's fees and expenses, sums that a plaintiff presumptively is entitled to receive upon a finding of contempt under G. L. c. 215, § 34A, fourth par. (unless the judge enters specific findings that such fees and expenses shall not be paid).

Finally, the judge who issued the modification and contempt judgments stated repeatedly in her memorandum and order on the motion for clarification that she did not find the husband guilty of contempt in 1994 (but did "consolidate and calculate" the support arrears) and did not include within the judgment a finding that the husband was in contempt. She is obviously in a unique position to clarify what she meant. Compare *Irving Coven Constr. & Realty, Inc.* v. *State Tax Commn.*, 5 Mass. App. Ct. 818, 819 (1977). In the peculiar circumstances presented here, and on the limited record before us, we cannot say that the judge erred as matter of law in concluding that the 1994 judgment was not a contempt judgment.[15]

The present case also illustrates the problems that may result when a judgment is labeled a "contempt judgment," but the defendant is not formally adjudged in contempt. To prevent

---

[15]The wife also suggests that the 1989 "contempt judgment" retained its "status as a contempt judgment" after incorporation in the 1994 judgment and that interest has run, and continues to run, on the 1989 judgment in accordance with G. L. c. 215, § 34A. As we have stated, the 1994 "contempt judgment" includes within the "total" arrearage figure established therein ($50,599.56) the amount of $24,324.56 fixed by the 1989 contempt judgment. The 1989 judgment contains no provision for the payment of interest, and the 1994 judgment makes no reference to interest accumulating on the 1989 judgment. We have not been provided with the pleadings or the transcripts of the 1989 and 1994 proceedings and are unable to determine what transpired there. There is no indication in the record before us that the wife made claim to, or otherwise put in issue in the 1994 proceedings, interest arising from the 1989 judgment, and the judge did not quantify an interest amount. From all that appears, the 1989 judgment was subsumed by the 1994 judgment.

confusion, the label "contempt judgment" should be used only in circumstances where a defendant actually is adjudged in contempt. Moreover, no matter the label, the judge should state specifically in the judgment whether or not the judge is adjudging the defendant guilty of contempt for purposes of G. L. c. 215, § 34A. Domestic Relations Form CJ-D404 (1989) provides for a clear expression of that determination. Any payment plan, see G. L. c. 215, § 34, second par., as well as any interest award pursuant to § 34A, should also be set forth, along with the methodology for computing any interest. See, e.g., *Kennedy* v. *Kennedy*, 20 Mass. App. Ct. at 563; *Allen* v. *Allen*, 25 Mass. App. Ct. at 523-524 & n.8.[16]

The wife argues, in the alternative, that even if the husband was not adjudged in contempt in September, 1994, the "monetary damages" found by the court to have accrued after the December, 1989, contempt judgment (totaling $26,275) carry interest under G. L. c. 231, § 6C,[17] G. L. c. 231, § 6H,[18] or G. L. c. 107, § 3.[19,20] Contrast *Karellas* v. *Karellas*, 54 Mass. App. Ct. 469, 471-473 (2002) (provision of judgment of divorce

---

[16]The form, unfortunately, does not address the interest issue.

[17]General Laws c. 231, § 6C, as appearing in St. 1982, c. 183, § 3, provides, in part: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand." The wife asserts, without supporting authority, that the statute "could be applied" to the 1994 contempt judgment as a court-ordered obligation to pay support "is akin to a contract."

[18]General Laws c. 231, § 6H, inserted by St. 1983, c. 652, § 1, provides: "In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law." Section 6B, which has application to a finding or judgment made for pecuniary damages for personal injuries and several other enumerated torts, provides for interest at the rate of twelve percent per annum from the date of commencement of the action.

[19]General Laws c. 107, § 3, provides that "[i]f there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of six dollars on each hundred for a year . . . ."

[20]We note that under G. L. c. 119A, § 13(*a*), inserted by St. 1987, c. 714, § 1, "[a]ny payment or installment of support under any child support order issued by any court of this commonwealth . . . shall be on or after the date it

nisi ordering husband to pay fixed sum of $100,000 to wife to effectuate equitable division of marital estate was "judgment for the payment of money" which bears interest pursuant to G. L. c. 107, § 3, and G. L. c. 235, § 8, as such). The wife states that the accrual of interest is necessary to put her in the same position she would have enjoyed had the husband paid promptly. Cf. *City Coal Co. of Springfield* v. *Noonan*, 424 Mass. 693, 695-696 (1997), *S.C.*, 434 Mass. 709 (2001).

In her motion for clarification, the wife proceeded on the theory that she was entitled to interest on arrears pursuant to G. L. c. 215, § 34A, which she characterized as the "applicable statute." The wife made no reference in her motion to any other statute in support of her claim for interest. At the hearing on the motion for clarification, the wife again argued that the 1994 judgment was a contempt judgment which carried interest (at the rate of twelve percent) pursuant to § 34A. She asserted, however, that even if the husband was not adjudged in contempt in September, 1994, the judgment "may well fit" under G. L. c. 231, § 6C, or G. L. c. 231, § 6H, both of which provide for interest rates of twelve percent. The wife represented to the court that "it really makes no difference if it's an actual contempt finding or if it's just a judgment finding; it runs at that rate, at 12 percent, in either event."[21] While the husband made some response to the wife's new argument, he stated to the judge (apparently with the wife's motion for clarification in mind) that G. L. c. 215, § 34A, was the "sole basis upon which [the wife] seeks interest."[22] In her memorandum of decision and order on the motion for clarification, the judge addressed the wife's claim that she was entitled to interest under § 34A but made no specific reference to any other statute.

is due, a judgment by operation of law, with the full force, effect, and attributes of a judgment of this commonwealth including the ability to be enforced . . . ." See generally *Lombardi* v. *Lombardi*, 68 Mass. App. Ct. 407, 413-414 (2007). The provisions of § 13 apply to all actions for the establishment, modification, or enforcement of a judgment or order for child support pursuant to or adjudicated under certain specified chapters of the General Laws. G. L. c. 119A, § 13(*d*). The wife makes no reference in her brief to c. 119A, § 13.

[21]There is no indication in the transcript on the motion for clarification that the wife called the judge's attention to G. L. c. 107, § 3.

[22]The husband continues to assert in his brief that the wife's claims with respect to G. L. c. 231, §§ 6C and 6H, were never presented to the court below.

The judge's memorandum and order strongly suggests that the judge was of opinion that the wife, in the circumstances, should be held to the theory advanced by her in her motion for clarification. To the extent the judge so ruled, we cannot say that she abused her discretion or otherwise erred as matter of law. We also agree with the husband that the wife's terse and conclusory "arguments" in her principal brief concerning the applicability of G. L. c. 231, §§ 6C and 6H, do not rise to the level of argument contemplated by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958); *Manchester* v. *Department of Envtl. Quality Engr.*, 381 Mass. 208, 214 n.7 (1980) (court may decline to consider issues that are inadequately developed). Much more is required, particularly where the wife is arguing that the statutory provision that the Legislature drafted to address the specific problem of interest on unpaid support obligations, G. L. c. 215, § 34A, is essentially unnecessary and superfluous because statutes that provide for interest on tort or contract verdicts apply to all unpaid child support judgments.

*Conclusion.* The order and the corrected order, both dated June 13, 2006, are affirmed. Although we affirm, the wife's appeal cannot be characterized as frivolous. Consequently, we deny the husband's motion for damages and double costs under Mass. R.A.P. 25, as appearing in 376 Mass. 949 (1979).

*So ordered.*